**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| LISA BAKER, et al. | ) |
| | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| CITY OF ATLANTA, et al. | ) |
| | ) |
| Defendants. | ) |
| | ) |

### PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

The City of Atlanta and Atlanta Police Foundation are constructing a controversial police training center in unincorporated DeKalb County. Activists opposed to the training center's location have undertaken a referendum initiative so that the issue is put before the voters. To succeed, they are required to obtain a certain number of signatures of City residents who support the initiative within a narrow timeline of 60 (sixty) days. Under Atlanta Municipal Code § 66-37(b), for a signature to count, it must be collected, witnessed, and attested to by a current resident of the City. This means that anyone who resides outside of the City cannot participate in circulating a referendum petition.

1

Plaintiffs reside in unincorporated DeKalb County and are not City of Atlanta residents. The construction project occurs entirely within unincorporated DeKalb County and outside the City's border. Yet the City excludes anyone who lives outside its border from supporting the petition effort by collecting signatures of City residents.

The Supreme Court has found that strict scrutiny applies to petition circulation efforts, and, as decisions across the country have held, nonresident bans on soliciting signatures are facially unconstitutional under the First Amendment (event for petition circulators living out-os-state). This Court should enjoin the City from enforcing Atlanta Municipal Code § 66-37(b) and its Atlanta residency requirement for petition circulators.

I.   **FACTUAL SUMMARY**[1]

A coalition of individuals and organizations filed a referendum petition with the Municipal Clerk of the City of Atlanta on June 7, 2023, seeking to repeal City of Atlanta Ordinance 21-O-0367, which authorized the lease of property to the Atlanta Police Foundation for the purposes of constructing a controversial public safety training center. Doc. 1 ¶¶ 7, 8, 9. There has been a great deal of political

---

[1] Plaintiffs rely on the factual allegations in the verified complaint and offer only a brief summary of those allegations here.

controversy surrounding the approval, funding, and construction of the training center. *Id.* ¶¶ 10–16. Ultimately, those opposed to the construction of the training center invoked the referendum process in the City of Atlanta, which, upon collecting sufficient valid signatures, requires the City to place the issue on the next ballot. *Id.* ¶¶ 39–51.

One requirement enforced by the City is that all signatures must be collected and witnessed by a person who is a resident of the City of Atlanta. *Id.* ¶¶ 41, 47–52, Ex. 1. Anyone acting as a canvasser must sign a verification that they are a current City resident. *Id.*

Plaintiffs each oppose the construction of the police training center. Each lives within miles of the training center's proposed location, and each wants to collect signatures as part of that effort but cannot do so because they reside outside of the City limits. *Id.* ¶ 53. The City's enforcement of the residency requirement means that Plaintiffs cannot challenge the construction of a government project which will be built in the county in which they live. *Id.* ¶¶ 18–37.

## II.   ARGUMENT AND CITATION OF AUTHORITY

To obtain a preliminary injunction, the moving party must demonstrate: (1) a substantial likelihood of success on the merits; (2) a substantial threat of

irreparable injury if the injunction is not granted; (3) the threatened injury to the movant outweighs the damage to the opposing party; and (4) granting the injunction would not be adverse to the public interest. *Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A.,* 320 F.3d 1205, 1210 (11th Cir. 2003); *K.H. Outdoors LLC v. City of Trussville,* 458 F.3d 1261, 1268 (11th Cir. 2006)*; Johnson v. United States Dep't of Agriculture,* 734 F.2d 774, 781 (11th Cir. 1984); Fed. R. Civ. P. 65(b). A plaintiff need only show a substantial likelihood of success on at least one count of the complaint, not all counts. *Butler v. Ala. Judicial Inquiry Comm'n*, 111 F. Supp. 2d 1224, 1230 (M.D. Ala. 2000).

No evidentiary hearing is necessary here given the undisputed facts and facial challenge.[2] Furthermore, "[a]t the preliminary injunction stage, a district court may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction, if the evidence is 'appropriate given the

---

[2] For the purposes of this preliminary injunction, Plaintiffs have limited their requested relief to enjoining the City to allow any current Georgia resident to participate in signature collection. Plaintiffs do not concede that a state-based residency ban under O.C.G.A. § 36-35-3(b)(2)(C) is constitutional but preliminary relief here is narrowly crafted to the ordinance directly impacting Plaintiffs, Atlanta Municipal Code § 66-37(b).

character and objectives of the injunctive proceeding.'"[3] Moreover, this is a case where consolidation of the preliminary injunction with permanent injunctive relief is appropriate because there are no disputed facts and the issue is a pure legal one.[4]

### a. Plaintiffs have a substantial likelihood of success on the merits because the nonresident ban violates the First Amendment

Plaintiffs seek an injunction against the enforcement of the prohibition on nonresidents collecting and witnessing signatures in support of the referendum initiative, Atlanta Municipal Code § 66-37(b), created under the authority O.C.G.A. § 36-35-3(b)(2)(C). Moreover, the City Clerk refused to approve a petition form that did not contain language requiring each canvasser to attest to being a current City resident.

---

[3] The "subpoena" power rationale is even weaker in this instance than in the *Chandler* case where the City of Atlanta referendum procedures do not provide any administrative procedure for a "protest hearing" at which opponents can contest the veracity of the petition signatures. The City Code provides merely that upon submission of the final petitions, "The council shall determine the validity of such petition within 50 days of its filing." Atlanta Municipal Code § 66-37(a).

[4] This leads to absurdity: Plaintiffs—who each live in unincorporated Dekalb County and are more affected by the decision to build the training center than most Atlanta residents—are denied even participation in the referendum process by soliciting signatures.

### *1.     The nonresident ban is subject to strict scrutiny*

Since the Supreme Court first addressed the law concerning initiative petitions, "a consensus has emerged that petitioning restrictions . . . are subject to strict scrutiny analysis." *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 317 (4th Cir. 2013) (holding that a Virginia residency requirement for circulators of petitions for an individual to be placed on the presidential ballot was unconstitutional ). This is because the circulation of initiative petitions is core political speech petitioning the government and necessarily "involves both the expression of a desire for political change and a discussion of the merits of the proposed change." *Meyer v. Grant*, 486 U.S. 414, 421 (1988). *See also Burdick v. Takushi*, 504 U.S. 428 (1992) (declaring that a requirement that petition canvassers be registered voters wa subject to strict scrutiny and violated the First Amendment).[5]

When a law is subject to strict scrutiny, the government must show content neutrality and: (1) its stated interests in upholding the law are compelling and (2)

---

[5] For the purposes of this preliminary injunction, Plaintiffs have limited their requested relief to enjoining the City to allow any current Georgia resident to participate in signature collection. Plaintiffs do not concede that a state-based residency ban under O.C.G.A. § 36-35-3(b)(2)(C) is constitutional but preliminary relief here is narrowly crafted to the ordinance directly impacting Plaintiffs, Atlanta Municipal Code § 66-37(b).

narrowly tailored to advance those interests. *See Burdick*, 504 U.S. at 434. *See also Republican Party of Minnesota v. White*, 536 U.S. 765, 774–75 (2002).

"When the Government defends a regulation on speech as a means to redress past harms or prevent anticipated harms, it must . . . demonstrate that the recited harms are real, not merely conjectural, and that the regulation will in fact alleviate these harms in a direct and material way." *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 646 (1994). "Ambiguous proof" will not suffice. *Otto*, 981 F.3d at 799.

### 2. *The government cannot establish that the nonresident ban is narrowly tailored*

Although the government has the burden of proof, the only interest that has been—or likely can be—advanced in support of residency requirements is to guard against fraud, i.e., that a person engages in the fraudulent collection of signatures.

It is generally accepted that the government has a compelling interest in preserving the integrity of elections.[6] It is also generally accepted that these residency bans on petition circulators violate the First Amendment. Numerous

---

[6] *See Drummond v. Fulton Cty. Dep't of Family and Children's Servs.*, 563 F.2d 1200, 1204 (5th Cir. 1977) (holding that such "consolidation represented a responsible exercise of judicial discretion in view of the essentially legal nature of the contest and the need for prompt action on this case"); *Budlong*, 488 F. Supp. 2d at 1248–50 (analyzing the factors to be considered in consolidating a preliminary injunction with a trial on the merits without the necessity of a hearing).

courts have invalidated nonresident circulator bans because they are not narrowly tailored to guard against fraud (and Georgia law has significant protections against voter fraud).

For example, in *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 318 (4th Cir. 2013), the court found that a residency requirement for petition circulators was not narrowly tailored because the state could protect against fraud by requiring an agreement of any nonresident circulators to consent to subpoena enforcement. Nearly every Circuit to address the question has held that a ban on out-of-state canvassers violates the First Amendment:[7]

- *We the People PAC v. Bellows*, 40 F.4th 1, 14 (1st Cir. 2022) (invalidating a law that required petition circulators to be Maine residents)

- *Lerman v. Bd. of Elections in City of New York*, 232 F.3d 135, 150 (2d Cir. 2000) (declaring a New York City ordinance that required nomination petition circulators to be residents of a political subdivision of the office that is the subject of the campaign)

---

[7] Only one circuit has upheld an out-of-state resident ban. *See Initiative & Referendum Inst. v. Jaeger*, 241 F.3d 614 (8th Cir. 2001). But *Jaeger* relied on the finding that the "residency requirement allows North Dakota's Secretary of State to protect the petition process from fraud and abuse by ensuring that circulators answer to the Secretary's subpoena power." *Id.* at 616. Again, that concern is not present in this case because Plaintiffs are not challenging the City's exclusion of out-of-state residents, and in-state residents (such as the Plaintiffs here) are subject to subpoenas.

- *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 318 (4th Cir. 2013) (declaring a Virginia residency requirement for petition circulators was not narrowly tailored to prevent election fraud and therefore unconstitutional)

- *Pool v. City of Houston*, 978 F.3d 307, 311-12 (5th Cir. 2020) (finding that a challenge to a law that required petition circulators to be Houston residents was not moot)

- *Nader v. Blackwell*, 545 F.3d 459, 475–76 (6th Cir. 2008) (agreeing that a residency requirement was unconstitutional but finding that the law was not clearly established for the purposes of qualified immunity)

- *Krislov v. Rednour*, 226 F.3d 851, 866 (7th Cir. 2000) (invalidating an Illinois statute that required nomination petition circulators to be a registered voter in the political subdivision in which the candidate is seeking office)

- *Pierce v. Jacobsen*, 44 F.4th 853, 860-61 (9th Cir. 2022) (invalidating a Montana statute requiring petition circulators to be state residents)

- *Yes on Term Limits, Inc. v. Savage*, 550 F.3d 1023, 1029 (10th Cir. 2008) (invalidating Oklahoma's ban on nonresident petition circulators).[8]

Other courts have observed that the "guard against fraud" rationale for petition canvasser residency requirements is illusory because nothing prohibits a

---

[8] As one district court summarized many of these cases: "Several important principles flow from . . . the decisions . . . that have struck down residency requirements for petition circulators. First, consistent with *Buckley*, petition circulation—whether for candidates or initiatives—constitutes core political speech protected by the First Amendment. Second, laws prohibiting nonresidents from acting as petition circulators significantly burden political speech because they substantially reduce the number of potential circulators and are therefore subject to strict scrutiny." *Citizens in Charge, Inc. v. Husted*, No. 2:13-CV-935, 2013 WL 11310689, at *7 (S.D. Ohio Nov. 13, 2013) (collecting cases).

person from, for example, moving out of state following the collection of signatures. *See, e.g.*, *Chandler v. City of Arvada, Colorado*, 292 F.3d 1236, 1244 (10th Cir. 2002) (holding a city could not ban non-city residents from circulating referendum petitions and observing that the residency requirement did not protect against fraud because "an Arvada resident who circulates a petition in Arvada, subsequently moves outside the City, but is later called upon by the City Clerk for a protest hearing, is beyond the reach of the City Clerk's subpoena power").

The hypothetical guard against fraud is even weaker than is typical in these cases. Unlike many of the circuit cases cited above, this law is not an interstate ban on canvassing. Instead, residency is based on municipality. Even Georgia residents who live outside the City cannot participate.[9] That means that, unlike the claim that a state could not issue a subpoena or engage in other enforcement activity outside of its borders, that concern is not even present here as Plaintiffs and other residents

---

[9] The "subpoena" power rationale is even weaker in this instance than in the *Chandler* case where the City of Atlanta referendum procedures do not provide any administrative procedure for a "protest hearing" at which opponents can contest the veracity of the petition signatures. The City Code provides merely that upon submission of the final petitions, "The council shall determine the validity of such petition within 50 days of its filing." Atlanta Municipal Code § 66-37(a).

of the State of Georgia are fully subject to subpoena power.[10] *See, e.g.*, *Chandler*, 292 F.3d at 1243.

The nonresident ban is not narrowly tailored. A law that is not narrowly tailored necessarily fails in all of its applications and that limitation is therefore facially unconstitutional. *See Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 797–98 (1984) (recognizing that a "holding of facial invalidity expresses the conclusion that the statute could never be applied in a valid manner" because "any attempt to enforce such legislation would create an unacceptable risk of the suppression of ideas").

### b.     Plaintiffs will suffer an irreparable injury

"The loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Cate v. Oldham*, 707 F.2d 1176, 1189 (11th Cir. 1983); *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981). "The denial of a Constitutional right, if denial is established, constitutes irreparable harm for

---

[10] This leads to absurdity: Plaintiffs—who each live in unincorporated Dekalb County and are more affected by the decision to build the training center than most Atlanta residents—are denied even participation in the referendum process by soliciting signatures.

purposes of equitable jurisdiction." *Ross v. Meese*, 818 F2d 1132, 1135 (4th Cir. 1987). The First Amendment occupies a unique place in our pantheon of freedoms, and as such is entitled to particular protection. *See Let's Help Florida v. Smathers*, 453 F. Supp. 1003, 1009 (N.D. Fla. 1978), *aff'd sub nom. Firestone v. Let's Help Florida*, 454 U.S. 1130 (1982). *See also Wooley v. Maynard*, 430 U.S. 705 (1977) (injunctive relief appropriate to prevent injury to Plaintiffs First Amendment rights); *Wolff v. Selective Service Local Board No. 16*, 372 F.2d 817, 824 (2d Cir.1967) "([O]nce the erosion of [First Amendment] rights is permitted to begin, it is exceedingly difficult to halt and the intervening damage may be irreparable").

### c. The balance of equities favors issuing an injunction

Each Plaintiff is denied the right to petition the government in soliciting signatures for a petition on an important contested political issue. Each Plaintiff is denied an essential role in the political process. The City's referendum process can easily be conducted with the addition of Georgians who will solicit signatures for the petition.

### d. The issuance of an injunction is in the public interest and will not harm third parties

"[T]he public interest is always served when constitutional rights, especially free speech rights, are vindicated." *University Books & Videos, Inc. v. Metropolitan*

*Date County*, 33 F.Supp.2d 1364, 1374 (S.D. Fla. 1999). There is no public interest in enforcing an unconstitutional ordinance. *Fla. Businessmen for Free Enter. v. City of Hollywood*, 648 F.2d 956, 959 (5th Cir. 1981).

### III. CONCLUSION

For the foregoing reasons, Plaintiffs request that their motion for preliminary injunction be granted.

Submitted this 6th day of July, 2023.

SPEARS & FILIPOVITS, LLC
315 W. Ponce de Leon Ave., Ste. 865
Decatur, Georgia 30030
404-905-2225
jeff@civil-rights.law
wingo@civil-rights.law
bspears@civil-rights.law

**Brian Spears**
Georgia Bar No. 670112

**Jeff Filipovits**
Georgia Bar No. 825553

**Wingo F. Smith**
Georgia Bar No. 147896

**Gerald Weber**
Georgia Bar No. 744878

Law Offices of Gerry Weber, LLC
Post Office Box 5391
Atlanta, Georgia 31107
404-522-0507
wgerryweber@gmail.com

13

## **CERTIFICATE OF COMPLIANCE**

Counsel hereby certifies that this document has been prepared in compliance with Local Rule 5.1C using 14-point Times New Roman font.

This 6th day of July, 2023.

                                          **Jeff Filipovits**
                                        Georgia Bar No. 825553
                                        Spears & Filipovits, LLC
                                        315 W. Ponce de Leon Ave., Ste. 865
                                        Decatur, GA 30030
                                        404-905-2225
                                        jeff@civil-rights.law