**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| LISA BAKER, JACQUELINE DOUGHERTY, KEYANNA JONES, and AMELIA WELTNER, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) ) | Civil Action File No. 1:23-cv-02999-MHC |
| v. | ) ) | |
| CITY OF ATLANTA and STATE OF GEORGIA, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**STATE OF GEORGIA'S RESPONSE AND OPPOSITION TO MOTION**
**FOR A PRELIMINARY INJUNCTION**

The State of Georgia, by and through its counsel, Attorney General Christopher M. Carr, makes this special appearance, without consenting to the jurisdiction of this Court, to file its response and opposition to Plaintiffs' motion for a preliminary injunction. In support thereof, the State asks the Court to consider the following:

## I.    Introduction

This case presents a question of how legislative authority is delegated within the State of Georgia. The Georgia Constitution vests the legislative power of this

1

State in the General Assembly. Over the years, the Georgia Supreme Court has described this power as both "plenary" and "awesome." But the Georgia Constitution also authorizes the General Assembly to delegate, in its discretion, legislative power and authority to municipalities, like the city of Atlanta. The General Assembly exercised that discretion in enacting the Municipal Home Rule Act of 1965. O.C.G.A. § 36-35-1 *et seq.*

In challenging the constitutionality of an Atlanta ordinance enacted under the authority of the Municipal Home Rule Act, Plaintiffs ask this Court to substitute its judgment for that of the General Assembly as to how and under what circumstances legislative power of the State of Georgia should be delegated. The Municipal Home Rule Act and corresponding ordinance from the City of Atlanta that place reasonable restrictions on ballot referendum petitions are entirely constitutional. But if they are not, then the entire ballot referendum process must fall because those restrictions cannot be severed from the General Assembly's delegation of legislative authority.

Plaintiffs' claim against the State, however, contains an even more fundamental problem: it is barred by the Eleventh Amendment to the United States Constitution. The Supreme Court has held repeatedly that federal courts lack the jurisdiction to provide relief against a sovereign state without its consent or through congressional abrogation of Eleventh Amendment immunity—neither of which

exists here.  For those reasons, and the other reasons discussed below, Plaintiffs' request for a preliminary injunction against the State should be denied.

## II.      Factual Background

Although the ultimate issue in this case relates the very structure of government in Georgia, the underlying dispute is much more mundane: how the city of Atlanta chooses to use its property.  In September 2021, the city council enacted ordinance 21-0-0367 (by a vote of 10 to 4), through which it authorized the lease of city property to the Atlanta Police Foundation to construct a training facility for the Atlanta Police Department and Atlanta Fire Rescue Department.[1]  (Compl. [Doc. 1] ¶ 8.)  Subsequently, in November 2021, the City of Atlanta held a general election for mayor and city council.[2]  Over the next two years, the city council received public comment about the training facility and continued moving forward with its development, including approving funding for the facility's construction.  (*Id.* ¶¶ 10-17.)

---

[1] Although some opponents of the training facility have disparagingly nicknamed the facility "Cop City," the plans for the facility are to serve multiple public service agencies, including fire and rescue services of Atlanta and other governments.  *See generally*   https://www.atltrainingcenter.com/ (last visited July 17, 2023).

[2] The results from the November 2, 2021 election are located at https://www.fultoncountyga.gov/electionresults.  It appears as though every council member who voted in favor of the ordinance was re-elected, including then-councilman Andre Dickens who won the election for mayor.

Unhappy with the City's decision, a "Cop City Vote" coalition initiated a ballot referendum petition to overturn ordinance 21-O-0367.[3]   (Compl. ¶ 17.) Plaintiffs, who are not residents or voters in the City of Atlanta, have brought suit challenging the constitutionally of a city ordinance that requires each petition to contain a place "for the person collecting signatures to provide such person's name, street address, city, county, state . . . and to swear that such person is a resident of the city. . . ."  *See* Atlanta Municipal Code § 66-37(b); (*see also* Compl. ¶¶ 23, 28, 36, 41).  Plaintiffs' contention is that because they are not residents of the City of Atlanta, their first amendment rights are infringed because they cannot "collect signatures" in support of overturning ordinance 21-O-0367.[4]  (Compl. ¶ 52.)

## III.   Legal Argument

This Court should deny Plaintiffs' request for a preliminary injunction for at least three reasons.  *First*, Plaintiffs' claims against the State are barred by the

---

[3] The Cop City Vote coalition does not appear to be a legally cognizable entity.

[4] Plaintiff's claims are likely moot because the ballot initiative is entirely invalid under Georgia law.  The Georgia Supreme Court has held that, as it relates to *cities* (as opposed to counties), ballot referendum petitions are "available only for proposed amendments to the city charter," and not to resolutions or ordinances not impacting the charter itself.  *Kemp v. City of Claxton*, 269 Ga. 173, 177 (1998). While the Georgia Supreme Court has questioned whether the holding in *Kemp* should be reconsidered, *Kemp* is and remains binding law in Georgia.  *See Camden County v. Sweatt*, 315 Ga. 498, 512 (2023) ("Because, here, we are construing a completely separate legal provision, the holding in *Kemp* does not control our decision in this case, and we need not consider at this time whether *Kemp* should be overruled. . . .").

Eleventh Amendment, and this Court simply cannot grant the relief requested against the State. *Second*, Atlanta Municipal Code § 66-37(b) does not unconstitutionally infringe on Plaintiffs' first amendment rights, and neither the Supreme Court nor the Eleventh Circuit have ever so held. *Third*, if Atlanta Municipal Code § 66-37(b) is unconstitutional, then the appropriate remedy is the entire ballot referendum petition must be eliminated because the requirements and procedures set by statute were part of the General Assembly's express delegation of legislative authority. This Court should not substitute its judgment for how the General Assembly's legislative authority is delegated for that of the General Assembly itself.

### A. The Court lacks jurisdiction to enter relief against the State.

A fundamental problem with Plaintiffs' complaint is that it seeks relief directly against the State of Georgia.[5] Under the Eleventh Amendment, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." While the express language "does not bar suits against a State by its own citizens, [the Supreme Court] has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974).

---

[5] The State intends to file a motion to dismiss on Eleventh Amendment grounds.

5

Thus, "[i]t is clear, of course, that in the absence of consent[,] a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 100 (1984). This bar from suits in federal court "exists whether the relief sought is legal or equitable." *Nichols v. Alabama State Bar*, 815 F.3d 726, 731 (11th Cir. 2016) (internal citations omitted). And while the doctrine of *Ex Parte Young* permits, under certain circumstances, suits seeking prospective relief against state *officials*, Plaintiffs here sued the State of Georgia itself. *See generally Pennhurst*, 465 U.S. at 102. Thus, because the State of Georgia does not consent to being sued in federal court, and there has been no congressional abrogation of Eleventh Amendment immunity in this case, this Court simply lacks jurisdiction to enter any relief against the State of Georgia. *See generally Seaborn v. Department of Corrections*, 143 F.3d 1405, 1407 (11th Cir. 1998) ("An assertion of Eleventh Amendment immunity essentially challenges a court's subject matter jurisdiction.")

## B. Atlanta Municipal Code § 66-37(b) is constitutional.

In support of their argument that Atlanta Municipal Code § 66-37(b) violates their first amendment rights, Plaintiffs argue that "[n]early every Circuit to address the question has held that a ban on out-of-state canvassers violates the First Amendment." (Pl.'s Br. [Doc. 2-1] at 8.) But neither the Supreme Court nor the

Eleventh Circuit has ever held that reasonable restrictions placed on ballot referendum petitions—like those at issue here—are unconstitutional. Before addressing that specific issue, however, it is worth emphasizing the constitutional and statutory basis and limitations for a ballot referendum petition in Georgia.

### 1. Municipal Home Rule Powers Under Georgia Law

Under the Georgia Constitution, the "legislative power of the state shall be vested in a General Assembly which shall consist of a Senate and a House of Representatives." Ga. Const. art. III, § I, ¶ I. As the Georgia Supreme Court has held, "[t]he inherent powers of the Georgia General Assembly are plenary. Unlike the United States Congress, which has only delegated powers, the Georgia legislature is given full lawmaking powers." *Bryan v. Georgia Public Servs. Comm'n*, 238 Ga. 572, 573 (1977).

In 1954, the Georgia Constitution was amended to authorize the General Assembly to delegate some of its legislative authority to cities and municipalities. *City of Brookhaven v. City of Chamblee*, 329 Ga. App. 346, 348 (2014). Under that amendment, which was incorporated into the 1983 Georgia Constitution, "[t]he General Assembly may provide by law for the self-government of municipalities and to that end is expressly given the authority to delegate its power so that matters pertaining to municipalities may be dealt with without the necessity of action by the

7

General Assembly."[6] Ga. Const. art. IX, § II, ¶ II. "A municipality, being a creature of the State, has only such direct power as is granted to it by the State and if there is a reasonable doubt of the existence of a particular power, the doubt is to be resolved in the negative." *Doraville v. S.R. Co.*, 227 Ga. 504, 510 (1971); *see also Miree v. United States*, 242 Ga. 126, 133 (1978) ("[M]unicipalities are creatures of the legislature and their existence may be established, altered, amended, enlarged or diminished, or utterly abolished by the legislature.").

The General Assembly exercised its authority and delegated certain home rule powers to municipalities when it enacted the Municipal Home Rule Act of 1965. O.C.G.A. § 36-35-3. Under that Act, the General Assembly delegated to each municipal corporation the "legislative power to adopt clearly reasonable ordinances, resolutions, or regulations relating to its property, affairs, and local government." O.C.G.A. § 36-35-3(a). The Municipal Home Rule Act also permitted municipalities, with certain restrictions and limitations, to amend their city charters through a ballot referendum petition.[7] O.C.G.A. § 36-35-3.

The City of Atlanta exercised this authority and permitted ballot referendum petitions. *See* Atlanta Municipal Code § 66-37(b). Under that city ordinance, if

---

[6] In contrast, the Georgia Constitution itself provides home rule powers to counties. *See, e.g.*, Ga. Const. art. IX, § IX, ¶ I.

[7] To reiterate, under Georgia law, the ballot referendum petition is limited to changes to the city charter—not amendments to resolutions or other ordinances. *Kemp*, 269 Ga. at 176.

fifteen percent of the registered voters, through signed petition, seek an amendment to the city charter, then the city council, after having confirmed the validity of the petitions, must issue a call for a special election. *Id.* § 66-37(a). The petitions themselves must be certified by the municipal clerk as to form, and must contain "a place on each form for the person collecting signatures to provide such person's name, street address, city, county, state, ZIP code and telephone number and to swear that such person is a resident of the city and that the signatures were collected inside the boundaries of the city." *Id.* § 66-37(b). The petition, with the required number of signatures, must be submitted sixty days after the petition was first issued by the clerk. *Id.* This process is generally consistent with grant of legislative authority from the Municipal Home Rule Act. *Compare* O.C.G.A. § 36-35-3(b)(2)(C).

### 2. The ballot referendum petition process does not violate the First Amendment.

Plaintiffs' argument is that the city code permitting a referendum ballot petition violates the First Amendment by imposing a residency restriction on the person who collects signatures. As an initial matter, a "statute is presumed to be constitutional." *Price v. Comm'r, Alabama Dep. of Corr.*, 920 F.3d 1317, 1325 (11th Cir. 2019). Moreover, "when one interpretation of a law raises serious constitutional problems, courts will construe the law to avoid those problems so long as the reading is not plainly contrary to legislative intent." *Pine v. City of West Palm Beach*, 762 F.3d 1262, 1270 (11th Cir. 2014).

9

Turning to the merits of Plaintiffs' arguments, neither the Supreme Court nor the Eleventh Circuit has ever declared that a requirement that a person *collecting* signatures be a resident of the municipality at issue is unconstitutional. In the two most relevant Supreme Court decisions, a provision prohibiting paying for an individual to "circulate" a petition and a provision requiring individuals circulating the ballots be *registered voters* in the jurisdiction they are seeking to change the law were unconstitutional. *See Meyer v. Grant*, 486 U.S. 414 (1988); *Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182 (1998). Importantly, however, in *Buckley*, the state law at issue *also* required a person circulating a petition be a resident of Colorado, but that provision was neither challenged nor struck as unconstitutional. 525 U.S. at 197.

Plaintiffs are correct that some other circuits have struck down residency requirements of "circulators" of petitions. *We the People PAC v. Bellows*, 40 F.4th 1 (1st Cir. 2022) (striking requirement that "circulators" seeking to change Maine law be residents of Maine); *Pierce v. Jacobsen*, 44 F.3d 853 (9th Cir. 2022) (striking requirement that "signature gathers" seeking petitions to change Montana law must be residents of Montana). Other circuits, however, have affirmed residency requirements for circulators. *See Initiative & Referendum Institute v. Jaeger*, 241 F.3d 614 (8th Cir. 2001) ("[T]here are no constitutional infirmities with the North Dakota laws requiring petition circulators to be state residents."). The fact that

courts go different directions on the issue makes sense in light of the Supreme Court's instruction that there is "no litmus-paper test that will separate valid ballot-access provisions from invalid interactive speech restrictions; we have come upon no substitute for hard judgments that must be made." *Buckley*, 525 U.S. at 191 (internal citations omitted).

One distinction between the Atlanta ordinance at issue and the "residency requirements" for "circulators" in many cases that have been generally struck down by other courts is that the Atlanta ordinance does not require a residency requirement for one "circulating" petitions. Instead, the Atlanta ordinance only requires that those "collecting signatures" certify that they are residents of Atlanta. *Compare We the People PAC*, 40 F.4th at 4 (law requiring that someone who "solicits signatures for the petition by presenting the petition to the voter, asking the voter to sign the petition and personally witnessing the voter affixing the voter's signature to the petition" must be a resident); *Meyer*, 486 U.S. at 416 n.1 (state law prohibiting individual "circulating" a referendum petition from receiving payment).

And while no Georgia court has expressly defined the term "collecting signatures," nothing in the law prohibits the Plaintiffs from going door-to-door to explain the petition, why it should or should not be signed, or otherwise engaging in speech related to the merits of the proposed training facility. *Compare Buckley*, 486 U.S. at 435 (noting the concern that state law could limit circulator's speech in

persuading citizens "that the matter is one deserving of public scrutiny and debate that would attend its consideration by the whole electorate"). Nothing in Atlanta Municipal Code § 66-37(b) prevents Plaintiffs from speaking with or debating the policy of the issues, or even discussing the merits of the petition; a reasonable reading of the code is that it only limits Plaintiffs from "collecting signatures."

**C. If Municipal Code § 66-37(b) is unconstitutional, then the entire ballot referendum petition must fall because there is no valid delegation of legislative authority.**

Under Georgia law, an unconstitutional provision of a law or statute is fatal to the entire statutory scheme if "the objectionable part is so connected with the general scope of the statute that, should it be stricken out, effect cannot be given to the legislative intent, the rest of the statute must fall with it." *DaimlerChrysler v. Ferrante*, 281 Ga. 273, 274 (2006).[8]   In determining whether to sever an unconstitutional provision, courts look to the purpose of the legislation, and if "the objectionable part is so connected with the general scope of the statute that, should it be stricken out, effect cannot be given to the legislative intent, the rest of the statute must fall with it." *Allen v. Wright*, 282 Ga. 9, 20 (2007). And where, as here, there is an absence of a severability clause in the legislation, there is a "presumption that the

---

[8] This Court should look to state law to determine whether an unconstitutional provision is severable from the statute as a whole. *See generally League of Women Voters of Florida, Inc. v. Florida Secretary of State*, 66 F.4th 905, 948 (11th Cir. 2023) (applying Florida law to determine whether unconstitutional statute was severable).

legislature intends the Act to be an entirety." *City Council of Augusta v. Mangelly*, 243 Ga. 358, 363 (1979); *see also* Ga. L. 1989, p. 1584 (act adding the relevant language to O.C.G.A. § 36-35-3(b)(2)(C) with no severability language). Thus, both the purpose and history of the Municipal Home Rule Act weigh against severing the residency requirement for signature collectors.

A fundamental principle of Georgia law is that municipalities, like the city of Atlanta, are creatures of the State and derive whatever power and authority they have from the legislative grace of the State. *Common Cause of Georgia v. City of Atlanta,* 279 Ga. 400, 402 (2005). And because municipalities are creatures of the State, they "possess only those powers that have been expressly or impliedly granted to them" by the State. *Porter v. Atlanta*, 259 Ga. 526 (1989). Thus, any delegation of power from the State to a municipality must be construed narrowly. *Id.*; *see also H.G. Brown Family, LP v. City of Villa Rica*, 278 Ga. 819, 820 (2005) ("A municipality has no inherent power . . . [its] allocation of power from the state must be strictly construed.").

This is especially true where, as here, the delegation of power at issue is a direct grant of legislative authority from the General Assembly itself. Prior to the Georgia constitutional amendment in 1954, delegations of legislative authority to municipalities were often struck down as entirely unconstitutional. *See Du Pre v. City of Marietta*, 213 Ga. 403, 405-06 (1957). As Georgia Supreme Justice Bethel recently noted, these "home rule measures [of the '50's and '60's] were adopted against the backdrop of a

state legislature with a reputation for being stridently opposed to implementing home rule provisions." *Camden County*¸ 315 Ga. at 518 (Bethel, J., concurring).

Keeping those general principles in mind, the General Assembly placed substantial limitations and restrictions on referendum ballot petitions. The General Assembly identified the number of signatures required, the individuals who are permitted sign the petitions, the type of language that must be used to describe the amendment or repeal, the number of days a petition may be circulate, and the process for the governing body to review and approve the validity of the petition. *See generally* O.C.G.A. § 36-35-3(b)(2)(B). The General Assembly made clear policy choices as to when and how electors could exercise legislative authority in derogation of the general rule that legislative power resides with the General Assembly. The decision to prohibit non-residents of a municipality being impacted by the proposed ballot referendum was part and parcel of the General Assembly's delegation of authority and policy choice, and cannot be surgically removed from the underlying statute.

Thus, if the residency requirement is unconstitutional, the entire ballot referendum process outlined in O.C.G.A. § 36-35-3(b)(2)(B) must fail. The General Assembly can then exercise its prerogative to either re-delegate that authority in a constitutional manner or it can allow the provision to die, as there is no constitutional right to a ballot referendum petition. *See generally Meyer*, 486 U.S. at 424.

## IV.   <u>Conclusion</u>

For all the reasons set forth above, the State of Georgia respectfully requests this Court deny Plaintiffs' motion for a preliminary injunction.

Submitted, this 17th day of July, 2023.

|  |  |
|---|---|
| CHRISTOPHER M. CARR<br>Attorney General | 112505 |
| <u>/s/ Logan B. Winkles</u><br>LOGAN B. WINKLES<br>Deputy Attorney General | 136906 |
| ALKESH B. PATEL<br>Senior Assistant Attorney General | 583627 |

Please direct all
communications to:

Logan B. Winkles
Deputy Attorney General
40 Capitol Square SW
Atlanta, Georgia 30334
T: (404) 458-3236
lwinkles@law.ga.gov

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing documents has been prepared in compliance with this Court's Local Rule 5.1B.  This document has been prepared in Times New Roman 14-point font.

This 17th day of July, 2023.

<u>/s/ Logan B. Winkles</u>
Logan B. Winkles
Georgia Bar Number 136906

**CERTIFICATE OF SERVICE**

I hereby certify that I have this 17th day of July, 2023, served the foregoing

STATE OF GEORGIA'S RESPONSE AND OPPOSITION TO MOTION FOR A

PRELIMINARY INJUNCTION by filing on the Court's CM/ECF system which

will provide electronic service on all counsel of record.

This 17th day of July, 2023.

/s/ Logan B. Winkles
Logan B. Winkles
Georgia Bar Number 136906