# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| LISA BAKER, et al. ) | |
| ) | |
| Plaintiffs, ) | Civil Action No.: |
| ) | |
| v. ) | 1:23-cv-2999-MHC |
| ) | |
| CITY OF ATLANTA, et al. ) | |
| ) | |
| Defendants. ) | |

## REPLY BRIEF IN SUPPORT OF
## PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

The City does not argue that the nonresident canvasser ban is narrowly tailored, and does not articulate what government interest it serves. Because the City bears the burden of proof on those issues, its failure to offer any justification for the law is fatal if strict scrutiny applies.

To avoid strict scrutiny, the City asks the Court to disregard seven circuits that have agreed that petition residency restrictions are subject to strict scrutiny.[1] The City's argument in favor of ignoring these appellate decisions is predicated on

---

[1] The Eighth Circuit is the only one to find that a state residency requirement was constitutional. *See Initiative & Referendum Inst. v. Jaeger*, 241 F.3d 614, 616 (8th Cir. 2001) (relying on the finding that the "residency requirement allows North Dakota's Secretary of State to protect the petition process from fraud and abuse by ensuring that circulators answer to the Secretary's subpoena power"). The City has not raised those concerns in this case.

1

its misreading of *Holt v. Civic Club v. City of Tuscaloosa*, 439 U.S. 60 (1978), which is a case about voting rights under the Fourteenth Amendment. *Holt* is not a First Amendment case and does not support this Court deviating from the analysis of numerous Circuit decisions involving the First Amendment rights of petition circulators.

    Next, the City argues that if the law is unconstitutional, the Court should not enjoin the nonresident ban because Plaintiffs will suffer no harm. The City's belated position is that the official petition forms approved by the City Clerk are illegal, and the collection of signatures is futile. But the City already had a chance to argue this in the Superior Court when the petition organizers filed a writ of mandamus after the City Clerk stonewalled releasing the petition forms. The City declined to do so and instead issued the official petition forms. The citizens are entitled to rely upon the presumption of regularity from their government. To whatever extent there is a viable legal dispute concerning the referendum, it is not ripe and not properly before the Court as the petition will have no force unless citizens of Atlanta demonstrate the required support by signing the petition and voting on the referendum.[2]

---

[2] Plaintiffs also note that they are not the organizers of the referendum, and that they simply wish to join the ongoing effort. Considering this argument would require the joinder of additional parties under appropriate parties under Fed. R. Civ. P. 19.

Finally, if the Court enjoins the enforcement of the nonresident ban, the City asks the Court to halt the referendum by striking down the entire referendum statute and ordinance. While the City spends much of its brief minimizing the effect of the nonresident ban, it paradoxically argues that the restriction is so vital that the legislature would not have enacted the law without the phrase "he or she is a resident of the municipality affected by the petition" included in it. *See* O.C.G.A. § 36-35-3(b)(2)(C). There is no reasonable basis to strike down the entire statute, and every court to consider severability in this context has found residency restrictions on petition circulators to be easily severable.

I. **ARGUMENT AND CITATION OF AUTHORITY**

   a. **The nonresident ban violates the First Amendment**

      1. ***Courts have universally applied strict scrutiny to restrictions on petition circulation***

The Supreme Court applied strict scrutiny to petition restrictions both times it considered restrictions on who can circulate referendum petitions.[3] In light of

---

[3] *See Meyer v. Grant*, 486 U.S. 414 (1988) (holding a ban on paid circulators violated the First Amendment); *Buckley v. American Constitutional Law Foundation*, Inc., 525 U.S. 182 (1999) (holding that requiring petition circulators to be a registered voter violated the First Amendment).

those cases, seven of the eight circuits that have considered the petition residency restrictions have also applied strict scrutiny.[4]

The City of Atlanta asks this Court to ignore that wall of authority. Its argument hinges the application of an irrelevant Supreme court case about voting rights, haggling over the definition of "circulator," and urging the Court to treat dicta in concurring and dissenting opinions as binding precedent.

### A. Strict scrutiny applies and the precise definition of "circulator" is irrelevant

The City argues that the definition of "circulator" in this case is different than the definition in *Meyer v. Grant*, 486 U.S. 414 (1988), and therefore a different standard should apply. In *Meyer*, it argues, petition circulators were required to attest "that each signature is of the person whose name it purports to be and that, to the best of their knowledge, each person signing the petition is a registered voter." *Id.* at 417. But in this case, it argues, the law "only requires a city resident attest . . . that the signatures were collected within city limits," and "does

---

[4] *See We the People PAC v. Bellows*, 40 F.4th 1 (1st Cir. 2022); *Lerman v. Bd. of Elections in City of New York*, 232 F.3d 135 (2d Cir. 2000); *Libertarian Party of Virginia v. Judd*, 718 F.3d 308 (4th Cir. 2013); *Pool v. City of Houston*, 978 F.3d 307, 311-12 (5th Cir. 2020); *Nader v. Blackwell*, 545 F.3d 459 (6th Cir. 2008); *Krislov v. Rednour*, 226 F.3d 851, 866 (7th Cir. 2000); *Nader v. Brewer*, 531 F.3d 1028 (9th Cir. 2008); *Pierce v. Jacobsen*, 44 F.4th 853, 860-61 (9th Cir. 2022); *Yes on Term Limits, Inc. v. Savage*, 550 F.3d 1023 (10th Cir. 2008); *but see Initiative & Referendum Inst. v. Jaeger*, 241 F.3d 614 (8th Cir. 2001).

not require a city resident to witness each signature, just that the resident participate in the collection process in a way that enables them to make the attestation." *See* Resp. Br., Doc. 15 at 5 & n.3.

First, nothing in *Meyer* indicates that the Court's analysis was based on the definition of a circulator or what the attestation requirements were. Instead, the question there was whether the law implicates core political speech. *See Meyer*, 486 U.S. at 421 ("The circulation of an initiative petition of necessity involves both the expression of a desire for political change and a discussion of the merits of the proposed change."). Seven circuits that considered the issue in light of *Meyer* (and *Buckley*) have applied strict scrutiny.

Second, to the extent the scope of the restriction is somehow relevant, the City completely ignores the actual text of the attestation contained on the official petition forms:

> **IN WITNESS WHEREOF**, the undersigned swears that on \_\_\_\_ day of _____ 2023, **I**, a registered elector in the City of Atlanta, Georgia, **have collected these signatures for this Petition within the City of Atlanta.**

Doc. 1-3 (emphasis added). The City does not explain why its official petition form requires a circulator to attest "I have collected," which is vastly different than the City's new-found standard, "I participated in the collection process in a way that enables me to make this attestation." *See* Resp. Br. Doc. 15 at 5.

5

Moreover, even if the scope of the residency restriction were relevant, the City's interpretation of the residency restriction still violates the First Amendment. For example, in *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 311 (4th Cir. 2013), the court found a requirement that the plaintiffs "must work in tandem with a resident of Virginia, whose sole purpose is to function as a witness" was subject to strict scrutiny because it "significantly slowed the process down and inhibited his ability to communicate effectively with potential signatories." *Id.* This mirrors, for example, Plaintiff Lisa Baker's experience on the first day the referendum was available. *See* Compl. ¶¶ 22-24.

### B. *Holt* is a Fourteenth Amendment voting rights case and irrelevant to the First Amendment claim here

The City argues this Court should not follow the seven circuit court opinions that applied strict scrutiny because six of them did not cite *Holt v. Civic Club v. City of Tuscaloosa*, 439 U.S. 60, 68–69 (1978). But *Holt* is (1) based upon a Fourteenth Amendment due process and equal protection analysis (2) in a voting rights case, not the First Amendment rights of petition circulators. Other circuits' opinions did not cite *Holt* because it is irrelevant.

The City attempts to expand *Holt's* holding by its use of the term "political process"[5] which the Court used to refer to voting. Plaintiffs are not attempting to vote for the ballot initiative. The First Circuit, which is the only circuit that even cited *Holt*, observed that "the fact that *Holt* upheld a limitation on the voting rights of non-residents does not show that a limitation on the right of nonresidents to circulate a petition is constitutional." *We the People PAC v. Bellows*, 40 F.4th 1, 22 (1st Cir. 2022).

### C. *Concurring and dissenting opinions in* Buckley *are irrelevant*

Finally, the City argues that the dissenting and concurring opinions *Buckley v. Am. Constitutional Law Found.*, 525 U.S. 182, 191 (1999), suggest that the Court might reach a different result if this case were before it. *Buckley* invalidated a requirement that petition circulators be registered voters but did not reach the law's ban on out-of-state circulators.[6]

---

[5] Defendant's argument that it has more power to restrict nonresidents because the referendum process is an "optional political process" mirrors the argument the Court rejected *Meyer* "that the power to ban initiatives entirely includes the power to limit discussion of political issues raised in initiative petitions." *Meyer*, 486 U.S. at 425. It likewise ignores that "if a state allows for initiatives through a petitioning process, the gathering of signatures and circulating of initiative petitions are protected by the First Amendment." *Pierce v. Jacobsen*, 44 F.4th 853, 859 (9th Cir. 2022).

[6] Although neither the statute nor ordinance requires that circulators be registered voters, the City's official petition form still imposes that requirement. It

7

In cases concerning out-of-state restrictions, some courts have acknowledged that the government has a legitimate interest in ensuring that signature collects are subject to the subpoena power of the state.[7] That concern is not present here, and the City has not raised it.

While the City is correct that the *Buckley* court did not decide the issue of whether a residency restriction on petition circulators violated the First Amendment because, that issue was not before the Court. However, even if *Buckley* could be interpreted as binding on an issue that it did not address, *Buckley* also involved clear arguments articulating the government's justification for the restrictions that do not apply to in-state residency restrictions. *See, e.g., id.* at 215 (O'Connor, J., concurring in judgment in part and dissenting in part) ("In the past,

---

requires circulators to aver that they are registered voters in the City of Atlanta when they sign the attestation. *See* Doc. 1-3. Thus, the City is imposing both a residency requirement and a voter registration requirement. This is yet another reason that the City's conduct violates the First Amendment.

[7] *Cf. Buckley*, 525 U.S. 184 (finding state's "interest in enabling the public to identify, and the State to apprehend, petition circulators who engage in misconduct is addressed by the requirement that circulators disclose their names and addresses on affidavits submitted with each petition section"); *Yes On Term Limits, Inc. v. Savage*, 550 F.3d 1023, 1029 (10th Cir. 2008) (finding state's interest in preventing fraud and subjecting circulators to subpoena during ten-day protest period failed strict scrutiny); *Nader v. Brewer*, 531 F.3d 1028, 1037 (9th Cir. 2008) (same); *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 318 (4th Cir. 2013) (finding the state failed to overcome strict scrutiny when there was a manifestly less burdensome way to have circulators consent to "the extraterritorial reach of the [its] subpoena power").

Colorado has had difficulty enforcing its prohibition on circulation fraud, in particular its law against forging petition signatures, because violators fled the State."). That stands in stark contrast to the complete absence of any governmental interest offered by the City of Atlanta here.

### 2. *The City offers no justification whatsoever for the residency restriction and fails to carry its burden of proof*

When strict scrutiny applies, the "government carries the burden of proof and, 'because it bears the risk of uncertainty, ambiguous proof will not' satisfy the 'demanding standard' it must meet." *Otto v. City of Boca Raton, Florida*, 981 F.3d 854, 868 (11th Cir. 2020) (quoting *Brown v. Entm't Merchants Ass'n*, 564 U.S. 786, 799—800 (2011). Yet the City has not argued that the residency restriction advances any specific government interest. Instead, it urges the Court to adopt the reasoning of *Holt* and *Rowe v. City of Cocoa*, 358 F.3d 800, 803 (11th Cir. 2004). The *Rowe* decision is about time-limited public comment at city council meetings which are a limited public fora where "interest conducting orderly, efficient meetings" allowed for "content-neutral conditions for the time, place, and manner of access, all of which must be narrowly tailored to serve a significant government interest." *Id.* at 803. Its logic is not applicable to circulating petitions. Moreover, to the extent that the City's argument is generally the right to self-governance, the

9

Ninth Circuit's decision in *Jacobsen* rightly points out that the residency restriction on circulation bears no relationship to "who may share in the legislative power at play in the initiative process." *Pierce v. Jacobsen*, 44 F.4th 853, 863 (9th Cir. 2022).

### b. Plaintiffs will suffer irreparable harm to their First Amendment rights if they are not allowed to collect petition signatures

#### 1. *The ultimate legality of the referendum is not before the Court and is not ripe for review*

Plaintiffs have demonstrated that the City's ordinance violates their First Amendment rights. The City nevertheless claims that this Court should not grant injunctive relief because—although the City Clerk issued official referendum petitions—those petitions are void because the referendum cannot be used as a vehicle to repeal the ordinance authorizing the construction of the training center. It argues that Plaintiffs, therefore, do not have standing and were not irreparably harmed. These arguments are not ripe and are irrelevant to the First Amendment analysis here.

The City's first argument "confus[es what it perceives as] weakness on the merits [of the petition] with absence of Article III standing." *Arizona State Legislature v. Arizona Indep. Redistricting Comm'n*, 576 U.S. 787, 800 (2015). Plaintiffs' standing is not dependent on the success or failure of the referendum

process but on their right to participate in that process. *See, e.g.*, *Krislov v. Rednour*, 226 F.3d 851, 857-58 (2000) (successful candidates for office had standing to challenge residency restriction despite ability to get onto the ballot); *Judd*, 718 F.3d at 313 (finding that plaintiff had standing even though "the [plaintiff] has yet to fail in its quadrennial quest to gather sufficient signatures in Virginia on behalf of its party's presidential candidate").

Additionally, challenges to the referendum are not ripe under Georgia law until after they are approved by the electorate for placement on the ballot and a successful vote on the petition by the electorate. *See* O.C.G.A. § 21-2-521 ("the approval or disapproval of any question submitted to electors at an election may be contested by . . . any aggrieved elector who was entitled to vote"); *see also O'Kelley v. Cox*, 278 Ga. 572, 581 (2004) (Sears, J., dissenting) ("[g]enerally, pre-election challenges to the substantive constitutional validity of referendum measures are not ripe for determination by a court").

### 2. *Atlanta's Charter provides a legal basis for repealing the ordinance at issue*

Even if the ultimate legality of the referendum could be used to defeat Plaintiffs' First Amendment claim, the City's legal analysis is incorrect. While the City acknowledges *Kemp* has recently been called into question by the Supreme

11

Court of Georgia,[8] it also ignores the City charter presents an alternative basis for the referendum process. City of Atlanta Charter § 2-501(a) states:

> (a) The council shall by ordinance prescribe procedures to govern the initiation, adoption, and repeal of ordinances by the electorate, and the council shall authorize an initiative or referendum election on petition of at least 15 percent of the registered voters qualified to vote in the preceding general municipal election.

*See* Ex. 1. This section of the City's charter was enacted by the Georgia legislature.[9] Because the legislature had the constitutional authority to legislate to the City that power under Ga. Const. art. IX, § 2, ¶ II, the City's charter provides an alternative authority for the right to amend or repeal ordinances that is not impacted by *Kemp*.

The City cites no law supporting its contention that the referendum could not invalidate the lease of City land. Contrary to its narrow reading, the lease continues to be performed, and the ordinance granting the authority described by Defendant

---

[8] The court admonished that "in reaching the holding in *Kemp*, this Court dismissed some of the canons of construction we apply in this case, stating, instead, that 'the spirit and intent of the legislation prevails over a literal reading of the language,' and '[t]he legislative intent will be effectuated even if some language must be eliminated.'" *Camden Cnty. v. Sweatt*, 315 Ga. 498, 512–13 (2023) (quoting *Kemp v. City of Claxton*, 269 Ga. 173, 176 (1998)). Indeed, "[w]hen [courts in Georgia] consider the meaning of a statute, we must presume that the General Assembly meant what it said and said what it meant." *Deal v. Coleman*, 294 Ga. 170, 172 (2013).

[9] *See*, 1996 Ga. Laws p. 4493, found online at http://dlg.galileo.usg.edu/do:dlg_zlgl_575898203.

has been the basis for subsequent funding under the lease. *See, e.g.*, Ex. 2, City of Atlanta Ordinance 23-O-1257. The city council stipulated important terms of the contract in the ordinance and authorized future performance by the mayor in carrying out or completing the lease contract, all of which are impacted by its repeal. *See* Ex. 3, City of Atlanta Ordinance 21-O-0367 § 5 and 6 (authorizing the mayor to execute other agreements or interests in furtherance of the ordinance or ground lease and to amend the lease after the final planning and design process). The authorization to the mayor is merely the form of the city's approval of the ongoing lease, not a one-time event.[10]

### c. The balance of equities favor an injunction

The City argues that this Court should deny the injunction because "Plaintiffs' request is untimely and would disrupt a process that is already well underway." Plaintiffs swiftly brought this challenge within two weeks of the City issuing the referendum petitions, *see* Doc. 1 at ¶ 48, and the City has little or nothing to oversee until the petition succeeds or fails. The City has restricted

---

[10] The City's Commerce Clause analysis likewise fails to account for the lease's unilateral termination clause, which allows the City of Atlanta to cancel the lease without cause upon 180 days' notice. *See* ¶ 4.3 of DEAM Lease, attached to Ordinance 21-O-0367 and found at http://atlantacityga.iqm2.com/Citizens/Detail_LegiFile.aspx?Frame=SplitView&MeetingID=3468&MediaPosition=0.000&ID=24221&CssClass=

Plaintiffs' participation in that process, and the relief Plaintiffs request remedies that harm. Furthermore, the City's attempt to extend *Purcell* is unwarranted. Unlike *Purcell,* there is no pending election or even a ballot at issue in this case. *Robinson v. Ardoin*, 37 F.4th 208, 228 (5th Cir. 2022) ("The classic *Purcell* case . . . concerns an injunction entered days or weeks before an election—when the election is already underway."). No election here could be set until sponsors have collected and turned in a sufficient number of signatures, and the City Council has determined whether the petition is valid. City of Atlanta Municipal Code § 66-37. Any election on the current referendum could be held either on November 7, 2023, or March 12, 2024. The process is sufficiently distant from an election date to extend signature collection without the unconstitutional restrictions placed on it by the City ordinance. Indeed, the actual citizen vote will be scheduled and occur, if at all, after the petition process is complete.

    d.    **The residency restriction is severable**

"When confronting a constitutional flaw in a statute," a court should "try to limit the solution to the problem." *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 328–29 (2006). Under Georgia law, which governs the severability question, to hold one part of a statute unconstitutional and uphold another part as separable, they must not be "mutually dependent upon each other."

*City Council of Augusta v. Mangelly*, 243 Ga. 358, 363 (1979) (citations and quotations omitted). The question is whether the severance would "result in a statute that fails to correspond to the main legislative purpose, or give effect to that purpose." *State of Georgia v. Jackson*, 269 Ga. 308, 312 (1998).

The legislative intent City Code § 66-37(b) is to provide for a method of holding referendums and election, and the limitation on who can collect signatures does not bear on the overall intent of the law. Striking the passage "and to swear that he or she is a resident of the municipality affected by the petition" will not disturb the intent of the law. Moreover, § 1-10 of the City Code contains a severability clause that applies to all municipal ordinances. *See* Ex. 4.

## II.   CONCLUSION

For the foregoing reasons, Plaintiffs request that their motion for preliminary injunction be granted.

Submitted this 21st day of July, 2023.

**Brian Spears**
Georgia Bar No. 670112

**Jeff Filipovits**
Georgia Bar No. 825553

**Wingo Smith**
Georgia Bar No. 147896

Spears & Filipovits, LLC
315 W. Ponce de Leon Ave.
Suite 865
Decatur, GA 30030
404-905-2225
bspears@civil-rights.law
jeff@civil-rights.law
wingo@civil-rights.law

**Gerald Weber**
Georgia Bar No. 744878

Law Offices of Gerry Weber, LLC
Post Office Box 5391
Atlanta, Georgia 31107
(404) 522-0507 (phone)
wgerryweber@gmail.com

## **CERTIFICATE OF COMPLIANCE**

Counsel hereby certifies that this document has been prepared in compliance with Local Rule 5.1C using 14-point Times New Roman font.

This 21st day of July, 2023.

                                                **Jeff Filipovits**
                                               Georgia Bar No. 825553
                                               SPEARS & FILIPOVITS, LLC
                                               315 W. Ponce de Leon Ave., Ste. 865
                                               Decatur, GA 30030
                                               404-905-2225
                                               jeff@civil-rights.law