UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| LISA BAKER, JACQUELINE DOUGHTERY, KENYANNA JONES, and AMELIA WELTNER,<br><br>    Plaintiffs,<br><br>v.<br><br>CITY OF ATLANTA,<br><br>    Defendants. | Case No. 1:23-cv-2999-MHC |

**DEFENDANT CITY OF ATLANTA'S MOTION TO
STAY THE PRELIMINARY INJUNCTION**

Robert L. Ashe
Ga. Bar No. 208077
ashe@bmelaw.com
Jane "Danny" Vincent
Ga. Bar No. 380850
vincent@bmelaw.com
Matthew R. Sellers
Ga. Bar. No. 691202
sellers@bmelaw.com

BONDURANT MIXSON & ELMORE LLP
1201 W. Peachtree St. NE, Suite 3900
Atlanta, GA 30309
404-881-4100

*Attorneys for Defendant City of Atlanta*

Pursuant to F.R.C.P. 62, the City of Atlanta requests this Court stay the preliminary injunction it granted on July 27, 2023. This Court ordered that the petition supporters get to *both* keep the signatures they collected *and* restart the 60-day clock. This remedy rewrites the state statute and city ordinance—a power this Court does not have—and if the Eleventh Circuit reverses this, or any other part of the Court's order, it will cause chaos and unnecessary expense for the petition process. Nor is the extension of the clock to 95-days appropriate under the preliminary injunction standard. The residency requirement is based on a 34-year-old state statute; the City did not invent this requirement specifically for this petition effort, it was simply complying with state law. Yet, the Court's grant of a 95-day collection period implies a degree of punishment to the City for its compliance with state law, or as compensation toward the Plaintiffs, rewarding them with an additional 35 days of collection. Neither of these are appropriate under the preliminary injunction standard. Preliminary injunctions are intended to maintain the status quo—not to change the rules mid-process or advantage one party over the other during the pendency of the litigation.

I.  **The new petition violates state law.**

As directed by the Court, the City provided official copies of a petition without the residency requirement to the petition sponsors yesterday, July 27. But, without

the residency attestation, this new petition is out of compliance with the state statute—which the Court did not enjoin—and is therefore an ultra vires action by the City. This poses a number of problems, not the least of which is potential legal action by the State against the City.

## II. The fashioned remedy is improper and likely to cause confusion and delay.

The statute authorizing the referendum process provides that "[a] petition authorized by subparagraph (A) of this paragraph <u>shall not be accepted</u> by the governing authority for verification <u>if more than 60 days have elapsed</u> since the date the sponsor of the petition first obtained copies of the petition from the clerk of the governing authority." O.C.G.A. § 36-35-3(b)(2)(C) (emphasis added). The Court's Order allows the sponsors to collect signatures for 95 days, but there is no authority for this in either the state statute or the city ordinance.

Assuming the Court is correct about the First Amendment, which the City respectfully disagrees with, the appropriate remedy would be to direct the City to issue a new petition without the residency requirement. As a new petition, the 60-day clock would reset, not extend. Arguably, the Court could also direct the City to issue a revised version of the current petition that the sponsors can use for the remaining statutory time and allow the sponsors to keep the signatures previously collected. But restarting the clock and keeping the previous signatures is simply not

permitted under the statute, nor is it "limited in scope to the extent necessary" to fit the specific alleged First Amendment violation, as injunctions must be.[1] *Keener v. Convergys Corp.*, 342 F.3d 1264, 1269 (11th Cir. 2003).

Not only is the remedy inappropriate, but it invites significant confusion, delay, and expense. If the Eleventh Circuit affirms the First Amendment ruling, but reverses the remedy (95-day clock), there is an open question about the nature of the newly circulating petition and thus the appropriate timetable. Is the new petition simply a revised version of the first petition or is it a new original petition? There are now two petitions circulating on the same topic, but the state statute does not contemplate cities revising petitions mid-process. At this time, the City takes no position on this question, but it is a question that will have to be answered if the Eleventh Circuit reverses the 95-day clock, a process that will frustrate both the City and the petition supporters.

Alternatively, the Eleventh Circuit could affirm the First Amendment ruling, but reverse on the severability issue. Under this scenario, the petition supporters will have spent 30–60 days funding and circulating a futile petition, because the referendum process will no longer exist. Finally, the Eleventh Circuit could reverse

---

[1] Indeed, by removing both the resident attestation and the 60-day clock, the Order guts subsection (C) of the statute altogether.

3

the First Amendment ruling. If this happens, the circulating petition (without the residency requirement) would be invalid, those the signatures could not be counted, and the petition would not meet the statutory threshold.

### III. The Order considers the wrong injury under the preliminary injunction standard.

The petition Plaintiffs wish to circulate is a nullity because a referendum seeking to repeal a city ordinance is invalid under *Kemp v. Claxton*. 269 Ga. 173 (1998). While this Court has not been asked to expressly consider the referendum's validity, *Kemp* is the black letter law in Georgia and the referendum—which seeks to repeal a city ordinance—is unquestionably invalid under *Kemp*. Thus, *Kemp* prohibits the City from putting the referendum on the ballot, regardless of how many signatures are on the petition or who collects them.[2]

---

[2] Nor, as the Court suggests, can Atlanta Charter § 2-501 circumvent the rule in *Kemp*. Section 2-501 of the city charter was adopted pursuant to a local act of the General Assembly, so even assuming Charter § 2-501 purported to authorize a referendum process distinct from O.C.G.A. § 36-35-3, it would be unconstitutional because it would conflict with a general law of the State. *See* Ga. Const. art. III, § VI, ¶ IV(a) ("Laws of a general nature shall have uniform operation throughout this state and no local or special law shall be enacted in any case from which provision has been made by an existing general law…."). The Municipal Home Rule Act authorizes only one specific referendum process, and any deviation from that process would conflict with the general law. *See, e.g., City of Atlanta v. Hudgins*, 193 Ga. 618, 623 (1942) ("Territorial uniformity is definitely required, and the subject matter of an existing general law is put beyond the reach of special laws."). In other words, the City of Atlanta does not get to have different referendum rules from every other municipality in the State.

Petition circulation is a unique type of communication. This is not a case where someone is prevented from speaking or writing about a political topic. The residency requirement does not prevent any individual from delivering any message about the safety training center to anyone they want, anywhere they want.

Instead, the issue here is the right to be heard through the political process itself. That's what makes referendums different from collecting signatures on a change.org petition: collecting signatures on an official petition can compel direct legislative change. As this Court recognized, the reason petition restrictions are a burden on political speech is not because they prevent nonresidents from talking about the referendum, but instead because the requirement "limits the number of persons who can promote the petition's message" and thus "makes it less likely that [the circulators'] will garner the number of signatures necessary to place the matter on the ballot." Order at 12 [Dkt. 26] (citing *Meyer v. Grant*, 486 U.S. 414, 422–23 (1988).

Given the controlling nature of *Kemp*, this Court should stay the injunction and allow the current petition process to run its course. If the supporters garner enough signatures, then they will present the petition to the city council, which will have no choice under *Kemp* but to reject the petition. Thus, if the harm is the likelihood that the referendum will get on the ballot, there is simply no immediate or irreparable

injury here that warrants preliminary relief. Allowing Plaintiffs to collect signatures does not make it any more likely that the referendum will get on the ballot. All an injunction does as this stage is cause unnecessary hassle, confusion and expense for a process that is ultimately futile under binding Georgia Supreme Court precedent.

## CONCLUSION

For these reasons, the City requests that this Court stay its preliminary injunction.

Respectfully submitted this 28th day of July, 2023.

/s/Robert L. Ashe
Robert L. Ashe III
Georgia Bar No. 208077
ashe@bmelaw.com
Jane D. Vincent
Georgia Bar. No. 350850
vincent@bmelaw.com
Matthew R. Sellers
Georgia Bar No. 691202
sellers@bmelaw.com
Bondurant, Mixson & Elmore, LLP
3900 One Atlantic Center
1201 W. Peachtree Street, NW
Atlanta, GA  30309
(404) 881-4100 – Telephone
(404) 881-4111 – Facsimile

*Attorneys for the City of Atlanta*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1D of the Local Rules for the Northern District of Georgia, I hereby certify that the foregoing pleading has been prepared in Times New Roman, 14-point font, as permitted by Local Rule 5.1C.

                                                     */s/ Robert L. Ashe III*
                                                     Robert L. Ashe III
                                                     Georgia Bar No. 208077

# CERTIFICATE OF SERVICE

I hereby certify that, on July 28, 2023, I served a true and correct copy of the within and foregoing **DEFENDANT CITY OF ATLANTA'S MOTION TO STAY THE PRELIMINARY INJUNCTION** by filing it with the Court's electronic filing system, which will serve a copy on all counsel of record.

>*/s/ Robert L. Ashe*
>Robert L. Ashe III
>Georgia Bar No. 208077