# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF GEORGIA
### 2211 UNITED STATES COURTHOUSE
### 75 TED TURNER DRIVE, SW
### ATLANTA, GEORGIA 30303-3361

KEVIN P. WEIMER
DISTRICT COURT EXECUTIVE
 AND CLERK OF COURT

DOCKETING SECTION
404-215-1655

July 31, 2023

Clerk's Office
U.S. Court of Appeals
Eleventh Circuit
56 Forsyth Street, NW
Atlanta, Georgia     30303

**U.S.D.C. No.: 1:23-cv-2999-MHC**
**U.S.C.A. No.: 00-00000-00**
**In re:         Lisa Baker et al v. City of Atlanta et al**

Enclosed are documents regarding an appeal in this matter.   Please acknowledge receipt on the enclosed copy of this letter.

| | |
|---|---|
| X | **Certified copies of the Notice of Appeal, Clerk's Judgment, Opinion & Order and Docket Sheet appealed enclosed.** |
| ___ | This is not the first notice of appeal. Other notices were filed on . |
| X | **There is no transcript.** |
| ___ | The court reporter is . |
| ___ | There is sealed material as described below: . |
| ___ | Other: . |
| X | **Fees paid on 7/28/23. (Receipt# AGANDC-12777534)** |
| ___ | Appellant has been   leave to appeal *in forma pauperis*. |
| ___ | This is a bankruptcy appeal.   The Bankruptcy Judge is . |
| ___ | The Magistrate Judge is Magistrate . |
| X | **The District Judge is Mark H. Cohen.** |
| ___ | This is a **DEATH PENALTY** appeal. |

Sincerely,

Kevin P. Weimer
District Court Executive
and Clerk of Court

By:   /s/P. McClam
Deputy Clerk

4months,APPEAL,SUBMDJ

# U.S. District Court
# Northern District of Georgia (Atlanta)
# CIVIL DOCKET FOR CASE #: <u>1:23–cv–02999–MHC</u>

| | |
|---|---|
| Baker et al v. City of Atlanta et al | Date Filed: 07/06/2023 |
| Assigned to: Judge Mark H. Cohen | Jury Demand: Plaintiff |
| Cause: 28:1331 Federal Question: Other Civil Rights | Nature of Suit: 440 Civil Rights: Other |
| | Jurisdiction: Federal Question |

**Plaintiff**

**Lisa Baker**                                            represented by   **George Brian Spears**
Spears & Filipovits, LLC
315 W Ponce de Leon Ave
Suite 865
Decatur, GA 30030
404–905–2225
Fax: 404–905–8216
Email: bspears@civil–rights.law
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Gerald R. Weber**
Law Office of Gerald R Weber, LLC
PO BOX 5391
Atlanta, GA 31107
404–522–0507
Email: wgerryweber@gmail.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey Filipovits**
Spears & Filipovits, LLC
315 W Ponce de Leon Ave
Suite 865
Decatur, GA 30030
678–237–9302
Fax: 404–905–8216
Email: jeff@civil–rights.law
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wingo F. Smith**
Spears & Filipovits, LLC
315 W Ponce de Leon Ave
Suite 865
Decatur, GA 30030
404–905–2225
Fax: 404–880–3461
Email: wingo@civil–rights.law

1

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**<u>Plaintiff</u>**

**Jacqueline Dougherty**                represented by   **George Brian Spears**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Gerald R. Weber**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey Filipovits**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wingo F. Smith**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**<u>Plaintiff</u>**

**Keyanna Jones**                represented by   **George Brian Spears**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Gerald R. Weber**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey Filipovits**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wingo F. Smith**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**<u>Plaintiff</u>**

**Amelia Weltner**                represented by   **George Brian Spears**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

2

**Gerald R. Weber**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey Filipovits**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wingo F. Smith**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**City of Atlanta**                            represented by   **Jane D. Vincent**
                                                                Bondurant Mixson & Elmore, LLP
                                                                1201 West Peachtree Street, N.W.
                                                                Ste 3900
                                                                Atlanta, GA 30309−3417
                                                                404−881−4147
                                                                Email: vincent@bmelaw.com
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Matthew Sellers**
                                                                Bondurant Mixson & Elmore LLP
                                                                1201 W Peachtree St NW
                                                                Ste 3900
                                                                Atlanta, GA 30309
                                                                404−881−4186
                                                                Email: sellers@bmelaw.com
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Robert Lawrence Ashe , III**
                                                                Bondurant Mixson & Elmore, LLP
                                                                1201 West Peachtree Street, N.W.
                                                                Ste 3900
                                                                Atlanta, GA 30309−3417
                                                                404−881−4100
                                                                Fax: .
                                                                Email: ashe@bmelaw.com
                                                                *ATTORNEY TO BE NOTICED*

**Defendant**

**State of Georgia**                          represented by   **Alkesh B. Patel**
*TERMINATED: 07/25/2023*                                       Attorney General's Office−Atl
                                                                Department of Law
                                                                40 Capitol Square, SW

Atlanta, GA 30334
404–463–2144
Email: apatel@law.ga.gov
*ATTORNEY TO BE NOTICED*

**Logan B. Winkles**
Office of the Attorney General–GA
40 Capitol Square, SW
Atlanta, GA 30334–1300
404–615–6249
Email: lwinkles@law.ga.gov
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 07/06/2023 | 1 | | COMPLAINT with Jury Demand filed by Jacqueline Dougherty, Keyanna Jones, Lisa Baker, Amelia Weltner. (Filing fee $402, receipt number AGANDC–12718632) (Attachments: # 1 Exhibit 1 – City Code § 66–37, # 2 Exhibit 2 – Email from City Clerk, # 3 Exhibit 3 – Referendum Form, # 4 Exhibit 4 – Verifications, # 5 Civil Cover Sheet (Not completed)(tmf) Please visit our website at http://www.gand.uscourts.gov/commonly–used–forms to obtain Pretrial Instructions and Pretrial Associated Forms which includes the Consent To Proceed Before U.S. Magistrate form. (Entered: 07/06/2023) |
| 07/06/2023 | 2 | | MOTION for Preliminary Injunction by Lisa Baker, Jacqueline Dougherty, Keyanna Jones, Amelia Weltner. (Attachments: # 1 Plaintiffs' Brief in Support of Motion for Preliminary Injunction)(tmf) (Entered: 07/06/2023) |
| 07/06/2023 | | | Submission of 2 MOTION for Preliminary Injunction, to District Judge Mark H. Cohen. (tmf) (Entered: 07/06/2023) |
| 07/06/2023 | 3 | | PROPOSED SUMMONS filed by Lisa Baker, Jacqueline Dougherty, Keyanna Jones, Amelia Weltner *as to City of Atlanta* (Filipovits, Jeffrey) (Entered: 07/06/2023) |
| 07/06/2023 | 4 | | PROPOSED SUMMONS filed by Lisa Baker, Jacqueline Dougherty, Keyanna Jones, Amelia Weltner *as to State of Georgia* (Filipovits, Jeffrey) (Entered: 07/06/2023) |
| 07/06/2023 | 5 | | NOTICE by Lisa Baker, Jacqueline Dougherty, Keyanna Jones, Amelia Weltner *of filing Civil Cover Sheet* (Filipovits, Jeffrey) (Entered: 07/06/2023) |
| 07/06/2023 | 6 | | ORDER: In order to expedite the consideration of Plaintiffs' Motion for Preliminary Injunction, it is hereby ORDERED as follows: (1) Plaintiffs shall cause service of the Complaint, the Motion for Preliminary Injunction, and this Court's Order to be made on Defendants and file proof of such service, or provide proof of the waiver of such service by Defendants' counsel, as soon as possible. (2) Defendants shall file a brief in response to Plaintiffs' Motion for Preliminary Injunction no later than seven (7) days after service is perfected or waived. (3) Plaintiffs shall file a reply to Defendants' response brief no later than seven (7) days after the filing of the response brief. Signed by Judge Mark H. Cohen on 7/6/2023. (tmf) (Entered: 07/06/2023) |
| 07/07/2023 | 7 | | |

| | | | |
|---|---|---|---|
| | | | Electronic Summons Issued as to City of Atlanta, State of Georgia. (Attachments: # 1 Summons State of Georgia)(tmf) (Entered: 07/07/2023) |
| 07/10/2023 | 8 | | CERTIFICATE OF SERVICE filed by Lisa Baker, Jacqueline Dougherty, Keyanna Jones, Amelia Weltner (Filipovits, Jeffrey) (Entered: 07/10/2023) |
| 07/10/2023 | 9 | | Return of Service Executed by Jacqueline Dougherty, Keyanna Jones, Lisa Baker, Amelia Weltner. State of Georgia served on 7/10/2023, answer due 7/31/2023. (Filipovits, Jeffrey) (Entered: 07/10/2023) |
| 07/10/2023 | 10 | | ACKNOWLEDGMENT OF SERVICE Executed filed by City of Atlanta. City of Atlanta served on 7/7/2023. (Ashe, Robert) (Entered: 07/10/2023) |
| 07/10/2023 | 11 | | Notice for Leave of Absence for the following date(s): July 25–August 14, 2023, by Robert Lawrence Ashe, III. (Ashe, Robert) (Entered: 07/10/2023) |
| 07/11/2023 | 12 | | NOTICE of Appearance by Robert Lawrence Ashe, III on behalf of City of Atlanta (Ashe, Robert) (Entered: 07/11/2023) |
| 07/11/2023 | 13 | | NOTICE of Appearance by Jane D. Vincent on behalf of City of Atlanta (Vincent, Jane) (Entered: 07/11/2023) |
| 07/11/2023 | 14 | | NOTICE of Appearance by Matthew Sellers on behalf of City of Atlanta (Sellers, Matthew) (Entered: 07/11/2023) |
| 07/14/2023 | 15 | | RESPONSE re 2 MOTION for Preliminary Injunction filed by City of Atlanta. (Ashe, Robert) (Entered: 07/14/2023) |
| 07/17/2023 | 16 | | RESPONSE in Opposition re 2 MOTION for Preliminary Injunction filed by State of Georgia. (Winkles, Logan) (Entered: 07/17/2023) |
| 07/17/2023 | 17 | | NOTICE of Appearance by Logan B. Winkles on behalf of State of Georgia (Winkles, Logan) (Entered: 07/17/2023) |
| 07/18/2023 | 18 | | NOTICE of Appearance by Alkesh B. Patel on behalf of State of Georgia (Patel, Alkesh) (Entered: 07/18/2023) |
| 07/20/2023 | 19 | | RESPONSE in Opposition re 2 MOTION for Preliminary Injunction *Amended* filed by State of Georgia. (Winkles, Logan) (Entered: 07/20/2023) |
| 07/21/2023 | 20 | | –––DOCUMENT FILED IN ERROR––– Guidelines for Discovery and Motion Practice. Signed by Magistrate Judge J. Clay Fuller on 7/21/2023. (tmf) Modified on 7/21/2023 to add red text(tmf). (Entered: 07/21/2023) |
| 07/21/2023 | | | Notification of Docket Correction re 20 –––DOCUMENT FILED IN ERROR––– Guidelines for Discovery and Motion Practice. Signed by Magistrate Judge J. Clay Fuller on 7/21/2023. (tmf) Modified on 7/21/2023 to add red text(tmf). (Entered: 07/21/2023) |
| 07/21/2023 | 21 | | REPLY BRIEF re 2 MOTION for Preliminary Injunction filed by Lisa Baker, Jacqueline Dougherty, Keyanna Jones, Amelia Weltner. (Attachments: # 1 Exhibit 1 – City Charter 2–501, # 2 Exhibit 2 – Atlanta Ordinance 23–O–1257, # 3 Exhibit 3 – Atlanta Ordinance 21–O–0367, # 4 Exhibit 4 – Atlanta Code 1–10)(Filipovits, Jeffrey) (Entered: 07/21/2023) |
| 07/21/2023 | 22 | | MOTION *to DROP STATE OF GEORGIA AS A PARTY PURSUANT TO FED. R. CIV. P. 21* by Lisa Baker, Jacqueline Dougherty, Keyanna Jones, Amelia |

| | | | |
|---|---|---|---|
| | | | Weltner. (Smith, Wingo) Modified on 7/25/2023 to edit relief(tmf). (Entered: 07/21/2023) |
| 07/25/2023 | 23 | | ORDER: Before the Court is Plaintiffs' Motion to Drop State of Georgia as a Party Pursuant to Fed. R. Civ. P. 21 [Doc. 22 ]. As indicated by its title. Plaintiffs have filed their motion pursuant to Rule 21 which gives the Court "[o]n motion or on its own" the authority to "add or drop a party." FED. R. CIV.P. 21. Although Plaintiffs have filed the present motion pursuant to Rule 21, the Court notes that Plaintiffs have the absolute right to amend their Complaint within twenty–one days of serving it or service of a motion under Rule 12(b) of the Federal Rules of Civil Procedure. See Blackburn v. Shire US Inc, 18 F.4th 1310, 1317 (11th Cir. 2021) (citing FED. R. Civ. P. 15). Because Plaintiffs have an absolute right to amend their Complaint to dismiss the State of Georgia, the Court finds that there is grounds for granting the present Motion to Dismiss. Accordingly, it is hereby ORDERED that Plaintiffs' Motion to Drop State of Georgia as a Party Pursuant to FED. R. Qv. P. 21 [Doc. 22 ] is GRANTED. Signed by Judge Mark H. Cohen on 7/25/2023. (tmf) (Entered: 07/25/2023) |
| 07/25/2023 | 24 | | REPLY BRIEF re 2 MOTION for Preliminary Injunction filed by City of Atlanta. (Attachments: # 1 Exhibit A– Email dated 6/21/2023 with Referendum Petition, # 2 Exhibit B– Email dated 6/14/2023 with Referendum Petition, # 3 Exhibit C– Email dated 6/14/2023 with Referendum Petition, # 4 Exhibit D– Email dated 6/14/2023 with Referendum Petition)(Ashe, Robert) (Entered: 07/25/2023) |
| 07/26/2023 | 25 | | RESPONSE re 22 Motion to Dismiss *Amicus Brief of State of Georgia* filed by State of Georgia. (Winkles, Logan) (Entered: 07/26/2023) |
| 07/27/2023 | 26 | | ORDER: It is hereby ORDERED that Plaintiffs' Motion for Preliminary Injunction [Doc. 2 ] Is GRANTED. Defendant City of Atlanta is PRELIMINARILY ENJOINED from enforcing the portion of City of Atlanta, Ga. Code of Ordinances § 66–37(b) that requires the person collecting signatures to swear that such person is a resident of the City of Atlanta. The Court further ORDERS the following as a part of its preliminary injunction relief: See document for specifics. Signed by Judge Mark H. Cohen on 7/27/2023. (tmf) (Entered: 07/27/2023) |
| 07/28/2023 | 27 | | *Defenses and* ANSWER to 1 COMPLAINT by City of Atlanta. Discovery ends on 12/26/2023.(Ashe, Robert) Please visit our website at http://www.gand.uscourts.gov to obtain Pretrial Instructions. (Entered: 07/28/2023) |
| 07/28/2023 | 28 | | NOTICE OF APPEAL as to 26 Order on Motion for Preliminary Injunction,, by City of Atlanta. Filing fee $ 505, receipt number AGANDC–12777534. Transcript Order Form due on 8/11/2023 (Ashe, Robert) (Entered: 07/28/2023) |
| 07/28/2023 | 29 | | MOTION to Stay *the Preliminary Injunction* by City of Atlanta. (Ashe, Robert) (Entered: 07/28/2023) |
| 07/31/2023 | 30 | | USCA Appeal Transmission Letter to USCA– 11th Circuit re: 28 Notice of Appeal filed by City of Atlanta. (pjm) (Entered: 07/31/2023) |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**LISA BAKER, JACQUELINE DOUGHERTY, KEYANNA JONES, and AMELIA WELTNER,**

**Plaintiffs,**

**v.**

**CITY OF ATLANTA,**

**Defendant.**

**CIVIL ACTION FILE**

**NO. 1:23-CV-2999-MHC**

## ORDER

This matter is before the Court on Plaintiffs' Motion for Preliminary Injunction ("Pls.' Mot.") [Doc. 2]. Plaintiffs ask this Court to preliminary enjoin Defendant City of Atlanta (the "City") from enforcing a restriction which bars them as nonresidents of the City from collecting signatures on a referendum petition to repeal City of Atlanta Ordinance 21-O-0367. For the reasons discussed below, Plaintiffs' Motion is **GRANTED**.

## I.     BACKGROUND

On September 7, 2021, an ordinance was adopted by the City to authorize its Mayor to lease 85 acres of land owned by the City in the South River Forest area of unincorporated DeKalb County to the Atlanta Police Federation for the

construction of a new Public Safety Training Center (the "Training Center") to
provide training facilities for the Atlanta Police Department and Atlanta Fire
Rescue Department.  City of Atlanta Ordinance 21-O-0367 (Sept. 7, 2021); see
also https://atltrainingcenter.com (last visited July 26, 2023); Verified Compl.
("Compl.") [Doc. 1] ¶ 8.  The ground lease agreement with the Atlanta Police
Federation was later signed by the Mayor of the City of Atlanta and construction
on the Training Center has proceeded.  As alleged in the Complaint, there has been
significant public opposition to both the construction and location of the Training
Center.  Compl. ¶¶ 9-10.

On June 5, 2023, the Atlanta City Council approved $33.5 million of public
funding for the Training Center.  Id. ¶¶ 15-16.  On June 7, 2023, Mariah Parker
("Parker"), on behalf of a group of individuals, submitted to the City's Municipal
Clerk a proposed petition for a referendum election to repeal City of Atlanta
Ordinance 21-O-0367.  Letter from Referendum Coalition to Foris Webb, III (June
7, 2023) [Doc. 1-2 at 2-4]; Compl. ¶ 7.  On June 14, 2023, A. Vanessa Walden
("Walden"), the Interim Municipal Clerk, sent an e-mail to Parker stating that "the
draft petition you have submitted is not approved as to form" because it "does not
comply with the legal requirement that the petition contain a place on each form
for the person collecting signatures to provide his or her name, street address, city,

2

county, state, ZIP code, and telephone number and to swear that he or she is a resident of the City of Atlanta[.]"  E-mail from A. Vanessa Waldon to Mariah Parker (June 14, 2023) [Doc. 1-2 at 1]; see City of Atlanta, Ga. Code of Ordinances ("Atlanta Municipal Code") § 66-37(b) (requiring the person collecting signatures to swear that such person is a resident of the City).

Based on the City's denial of the referendum petition, the "Cop City Vote" coalition[1] submitted a proposed petition which included the required attestation that the persons collecting signatures were residents of the City of Atlanta.  Compl. ¶ 47.  On June 21, 2023, Waldon approved and distributed official copies of the referendum petition to that coalition, starting the 60-day clock to collect signatures. Id. ¶¶ 48-49; see also Atlanta Municipal Code § 66-37(b) ("The collection of signatures for the petition shall begin on the day the municipal clerk provides official copies to the sponsor of the petition.  A petition authorized by this section shall not be accepted by the counsel for verification if more than 60 days have

---

[1] Although not entirely clear from the Complaint, it appears that the "Referendum Coalition" which sent the June 7, 2023, letter to the Municipal Clerk is the same coalition referred to in the Complaint as the "Cop City Vote" or "Stop Cop City" coalition.  Compare Compl. ¶¶ 45, 47, 50, with June 7, 2023, Letter to Foris Webb, III from "Referendum Coalition" [Doc. 1-2].

elapsed since the date the sponsor of the petition first obtained copies of the

petition from the municipal clerk.").

Plaintiffs are residents of unincorporated DeKalb County, most of whom

live within four miles of the proposed Training Center, but are not residents of the

City. Compl. ¶¶ 18, 25, 29-30, 33-34. They want to be able to collect signatures

on a petition to repeal City of Atlanta Ordinance 21-O-0367 but are unable to do so

because they are not residents of the City. Id. ¶¶ 22, 24, 27-28, 32, 36.

On July 6, 2023, Plaintiffs filed a Verified Complaint against the City of

Atlanta[2] alleging that Atlanta Municipal Code § 66-37(b) violates their First

Amendment rights to speech and to petition their government by requiring those

who gather signatures on a referendum petition to be residents of the City. Id.

¶¶ 54-63. Atlanta Municipal Code § 66-37(b) provides, in pertinent part, as

follows:

> The sponsor of a petition authorized by this section shall obtain copies
> of all official petitions from the municipal clerk. The municipal clerk
> shall approve all petitions as to form. The municipal clerk shall provide
> a place on each form for the person collecting signatures to provide
> such person's name, street address, city, county, state, ZIP code and

---

[2] Plaintiffs' Complaint also named as a Defendant the State of Georgia; however,
on July 21, 2023, Plaintiffs moved to drop the State of Georgia as a party
defendant, which motion was granted by this Court's Order of July 25, 2023 [Doc.
23].

> telephone number and <u>to swear that such person is a resident of the city</u> and that the signatures were collected inside the boundaries of the city.

Atlanta Municipal Code § 66-37(b) (emphasis added).  Atlanta Municipal Code § 66-37(b) follows the relevant provision in the State of Georgia's Municipal Home Rule Act of 1965; namely, O.C.G.A. § 36-35-3(b)(2)(C).  <u>See</u> Compl. ¶¶ 3, 38-39, 42-44, 54, 62.

Among the remedies sought by Plaintiffs is for the Court to "[e]nter a preliminary . . . injunction that (1) prohibit[s] Defendants from enforcing the residency requirement of Atlanta Municipal Code § 66-37(b)," (2) requires the City to issue new official copies of the referendum petition that removes any residency restriction "for people circulating the petition,"[3] and (3) requires that the time period for collecting signatures be restarted and existing properly collected signatures be accepted.  Compl., Request for Relief at 14.  Plaintiffs also filed a Motion for Preliminary Injunction, which asks the Court for that same relief.  Pl.'s Mot. at 3-4.

---

[3] Atlanta Municipal Code § 66-37(b) does not require that petition "circulators" be residents of the City, but only that those individuals who are "collecting signatures" be City residents.

## II.   LEGAL STANDARD

In order to obtain a preliminary injunction, a plaintiff must demonstrate: (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that granting the relief would not be adverse to the public interest. Scott v. Roberts, 612 F.3d 1279, 1290 (11th Cir. 2010); Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1225-26 (11th Cir. 2005). A preliminary injunction is an extraordinary remedy which a court should grant only when the movant clearly carries the burden of persuasion as to each of the four prerequisites. Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A., 320 F.3d 1205, 1210 (11th Cir. 2003). The decision whether to grant preliminary injunctive relief is within the broad discretion of the district court. Democratic Party of Ga., Inc. v. Crittenden, 347 F. Supp. 3d 1324, 1339 (N.D. Ga. 2018). The likelihood of success on the merits ordinarily is considered the most important of the four factors. Garcia-Mir v. Meese, 781 F.2d 1450, 1453 (11th Cir. 1986).

## III.   DISCUSSION

Plaintiffs allege they have a substantial likelihood of success on the merits because (1) the requirement that petition signature gatherers be residents of the

City is subject to strict scrutiny since it involves core political speech, (2) the City cannot establish that the residency requirement for signature gatherers is narrowly tailored to serve any compelling governmental interest, (3) Plaintiffs will suffer an irreparable injury if the injunction does not issue, and (4) the balance of interests favors the issuance of an injunction to permit nonresidents to gather signatures. Pls.' Br. in Supp. of Pls.' Mot. [Doc. 2-1] at 5-12. Plaintiffs represent that an evidentiary hearing is unnecessary and do not request one. Id. at 4.

In response, the City argues that (1) the residency verification requirement for signature gatherers is not subject to strict scrutiny, (2) the City's interest in self-governance is a legitimate restriction on Plaintiffs' right to participate in the political process, (3) Plaintiffs cannot show irreparable injury because there is no statutory authority for the referendum sought by Plaintiffs and the subject lease already has been executed, and (4) the City's interest to insure the integrity of the political process outweighs Plaintiffs' alleged injury. Def. City of Atlanta's Resp. to Pls.' Mot. ("City's Opp'n") [Doc. 15] at 2-20. The City also contends that if the Court finds that the residency requirement for signature gatherers in Atlanta Municipal Code § 66-37(b) is unconstitutional, then the ordinance must be struck down in its entirety because the residency requirement for petition circulators cannot be severed from the remainder of the ordinance. City's Opp'n at 21-23.

7

In its reply, Plaintiffs assert that the City offers no justification for the residency restriction, the City's charter provides a legal basis for the manner in which the proposed referendum seeks to repeal the ordinance, the referendum's ultimate legality is not ripe for review, the balance of equities favor an injunction, and the residency restriction can be severed from the remainder of the ordinance. Reply Br. in Supp. of Pls.' Mot. ("Reply Br.") [Doc. 21] at 3-14.[4]

---

[4] The City has filed a surreply to address purported "incorrect [] arguments" made by Plaintiffs in their reply brief. The City's Sur-Reply to Pls.' Mot. ("City's Surreply") [Doc. 24]. "Neither the Federal Rules of Civil Procedure nor this Court's local rules authorize the filing of surreplies." Fedrick v. Mercedes-Benz USA, LLC, 366 F. Supp. 2d 1190, 1197 (N.D. Ga. 2005) (citation omitted). The Court has discretion to permit the filing of a surreply, which discretion should be exercised in favor of permitting the filing "only where a valid reason for such additional briefing exists, such as where the movant raises new arguments in its reply brief." Id. The City has not filed a motion for leave to file the surreply, instead requesting permission to do so within its actual filing. City's Surreply at 2. With all due respect to the City, there is not much in the Surreply that assists the Court in resolving the pending motion. To the extent the Court deems it necessary to cite to the Surreply, it will do so in this Order.

8

A. **Plaintiffs Are Likely to Succeed on the Merits of Their Constitutional Challenge to the Residency Restriction for Signature Gatherers Contained in Atlanta Municipal Code § 66-37(b).**

1. **The Residency Restriction for Signature Gatherers is Subject to Strict Scrutiny.**

The First Amendment, as made applicable to the states through the Fourteenth Amendment, prohibits states from enacting laws "abridging the freedom of speech." U.S. Const. amend I; McIntyre v. Ohio Elections Comm'n, 514 U.S. 334, 336 & n.1 (1995). The Supreme Court has stated that, where a state permits initiatives through a petitioning process, "the circulation of a petition [for a voter initiative] involves the type of interactive communication concerning political change that is appropriately described as 'core political speech'" under the First Amendment. Meyer v. Grant, 486 U.S. 414, 421-22 (1988). In Meyer, the Supreme Court held that a Colorado state law that criminalized the use of paid petition circulators violated the First Amendment because it imposed a significant burden upon political speech which could not be justified as a manner of protecting ballot integrity. Id. at 427-28.

However, the First Amendment does not bar all restrictions on circulating petitions, and the states have "considerable leeway to protect the integrity and reliability of the initiative process, as they have with respect to election processes

9

generally." Buckley v. Am. Const. L. Found., Inc., 525 U.S. 182, 191 (1999) (citation omitted).  In Buckley, the Supreme Court upheld Colorado's requirements that petition circulators be at least eighteen years old, that the petition circulation period be limited to six months, and that circulators attach an affidavit with the circulator's name and address as reasonable regulations of the ballot-initiative process, but struck down requirements that circulators be registered voters, wear certain identification badges, and provide certain disclosures if they are paid.  Id. at 192-205.  The Supreme Court noted that the plaintiffs in Buckley "did not challenge Colorado's right to require that all circulators be residents" and stated that "assuming that a residence requirement would be upheld as a needful integrity-policing measure—a question we . . . have no occasion to decide because the parties have not placed the matter of residence at issue—the added registration requirement is not warranted." Id. at 197.[5]  The Court in Buckley reiterated the holding in Meyer that laws which "limit the number of voices who will convey the initiative proponents' message and, consequently, cut down the size of the audience proponents can reach" impose a significant burden on political

---

[5] The City argues that if you consider comments from the concurring and dissenting opinions in Buckley, a solid minority of the Court at that time arguably may have upheld a residency requirement for petition circulators.  City's Opp'n at 6-8.  Unfortunately for the City, that math does not equate to binding precedent.

10

expression.  Id. at 194-95 (quoting Meyer, 486 U.S. at 422, 423) (internal alterations accepted).

Although the Eleventh Circuit has not opined as to whether a requirement that petition circulators or signature gatherers be residents of the state or county in which the petition is to be circulated should be evaluated under strict scrutiny, a number of other circuits agree that such a requirement is a severe burden on First Amendment rights and subject to a strict scrutiny analysis.  See Pierce v. Johnson, 44 F.4th 853, 861 (9th Cir. 2022) (holding that Montana's requirement that initiative petition signature gatherers be state residents "imposes a severe burden on the First Amendment rights of both out-of-state residents and in-state proponents and is therefore subject to strict scrutiny"); We The People PAC v. Bellows, 40 F.4th 1, 14 (1st Cir. 2022) (holding that Maine's requirement that petition circulators be state residents is a severe burden on political speech subject to strict scrutiny); Yes on Term Limits, Inc. v. Savage, 550 F.3d 1023, 1028 (10th Cir. 2008) ("[S]trict scrutiny is the correct legal standard under which to analyze Oklahoma's ban on non-resident circulators.").[6]

---

[6] Although not directly on point, still other circuits have applied strict scrutiny when considering challenges to state residency requirements for nomination petition circulators on behalf of candidates for office.  Wilmoth v. Sec'y of New Jersey, 731 F. App'x 97, 103 (3d Cir. 2018); Libertarian Party of Va. v. Judd, 718 F.3d 308, 317 (4th Cir. 2013); Lerman v. Bd. of Elections in City of New York,

The City argues that strict scrutiny should not apply because its requirement that signature gatherers be City residents does not infringe on the political speech of nonresidents.  City's Opp'n at 3-5.  But the residency requirement clearly limits the number of persons who can promote the petition's message thereby limiting the potential number of the City's residents who can receive the political message and making it less likely that the proponents of the petition can gather sufficient signatures to place the initiative on the ballot.  See Meyer, 486 U.S. at 422-23 (discussing how a severe restriction on petition circulators "limits the number of voices who will carry the [circulators'] message" thereby "limit[ing] the size of the audience they can reach," and "makes it less likely that [the circulators'] will garner the number of signatures necessary to place the matter on the ballot").

Like the other circuits which have considered this issue, this Court holds that the City's residency restriction for signature gatherers in Atlanta Municipal Code § 66-37(b) is subject to strict scrutiny because it imposes a severe burden on core political speech.

---

232 F.3d 135, 146 (2d Cir. 2000); Krislov v. Rednour, 226 F.3d 851, 860-61 (7th Cir. 2000).  And in the one circuit that has upheld the constitutionality of a state residency requirement for circulators of initiative petitions, the court apparently applied strict scrutiny as it upheld the restriction based on the state's "compelling interest" in preventing fraud.  Initiative & Referendum Institute v. Jaeger, 241 F.3d 614, 616 (8th Cir. 2001).

2.     **The Residency Restriction for Signature Gatherers is Not Narrowly Tailored to Serve a Compelling Governmental Interest.**

Because the City argues that the residency restriction is not subject to strict scrutiny, it fails to present any argument that the requirement is narrowly tailored to serve a compelling governmental interest. Instead, the City asserts the restriction serves a legitimate interest of restricting the right to participate in the political process only to its own residents,[7] citing as its only supporting authority Holt Civic Club v. City of Tuscaloosa, 439 U.S. 60 (1978). City's Opp'n at 8-10.

In Holt, residents of an unincorporated community outside the city limits of Tuscaloosa, Alabama brought a class action complaint to challenge the constitutionality of the city's jurisdiction over the community's police, sanitary, and business licensing powers without permitting its residents to vote in Tuscaloosa's elections. Id. at 61-63. The Supreme Court concluded that "Alabama's police jurisdiction statutes violate neither the Equal Protection Clause nor the Due Process Clause of the Fourteenth Amendment" because "state

---

[7] The City cites only to its right to self-governance as its legitimate interest and makes no argument that the residency restriction on signature gatherers somehow protects against petition fraud. Although it argues that the balance of equities factor should be decided in its favor based on "ensuring the integrity of the political process," City's Opp'n at 19, it offers no examples and does not explain how the residency requirement for signature gatherers would accomplish that goal.

13

legislatures have a legitimate interest in seeing that this substantial segment of the population does not go without basic municipal services" that are paid for through license fees.  Id. at 74-75.  Holt had nothing to do with a challenge under the First Amendment or a review of a restriction on the residency of petition circulators or signature gatherers.  The City chooses to focus on the portion of the opinion which discusses the right of a municipality to "restrict the right to participate in its political processes to those who reside within its borders."  City's Opp'n at 9-10 (quoting Holt, 439 U.S. at 68-9).  The full text of that reference states as follows:

> No decision of this Court has extended the "one man, one vote" principle to individuals residing beyond the geographic confines of the governmental entity concerned, be it the State or its political subdivisions.  On the contrary, our cases have uniformly recognized that a government unit may legitimately restrict the right to participate in its political processes to those who reside within its borders.  Bona fide residence alone, however, does not automatically confer the right to vote on all matters, for at least in the context of special interest elections the State may constitutionally disfranchise residents who lack the required special interest in the subject matter of the election.

Holt, 439 U.S. at 68-69 (citations omitted).

The issue in this case is not that Plaintiffs are being denied the right to vote in the City's elections despite having to pay for certain municipal services or because they are impacted by the construction of the Training Center.  The issue is whether the City's residency restriction upon signature gatherers for a

14

petition to repeal a municipal ordinance is narrowly tailored to serve the City's interest in self-government.  Holt offers no guidance on that issue, but other recent Circuit decisions do.  See e.g., We the People PAC, 40 F.4th at 22 ("[T]he fact that Holt upheld a limitation on the voting rights of non-residents does not show that a limitation on the right of nonresidents to circulate a petition is constitutional.").

In Pierce, the State of Montana contended that the requirement that initiative petition signature gatherers be residents of Montana was narrowly tailored to protect the right of self-governance, which is a compelling state interest.  Pierce, 44 F.4th at 863.  The court found that the restriction was not narrowly tailored to advance the interest in self-government:

> Montana offers no evidence or explanation for why this interest [in self-government] would not be vindicated through a system requiring that official proponents, petition signers, and voters on initiatives be residents.  These restrictions on who may share in the legislative power at play in the initiative process would more directly protect the interest in self-government with only a minimal burden on political speech.  Based on the record here, there is no evidence that a residency requirement for signature gatherers is necessary to adequately serve Montana's self-government interest.
>
> Montana's residency requirement bans non-residents from participating in a form of core political speech entirely rather than confining the restriction to the narrower subset of conduct unique to residents in self-government.  While it is one thing to limit carrying out the functions of self-government to residents, limiting core political speech to residents even on matters of state elections is a far broader restriction, and that restriction is not narrowly tailored here.

15

Id.

Similarly, in this case, the City's residency restriction for petition signers and referendum voters is narrowly tailored to serve a compelling interest of self-government.  But requiring signature gatherers to be residents of the City imposes a severe burden on core political speech and does little to protect the City's interest in self-governance.  Indeed, the City correctly takes the position that Atlanta Municipal Code § 66-37(b) does not prevent nonresidents from circulating petitions, but only from gathering signatures.  See City's Opp'n at 2 ("Atlanta's ballot initiative ordinance does not prevent nonresidents from . . . soliciting signatures . . ."), 5 ("[N]onresidents are free to solicit and witness signatures . . .").  Because only residents can sign petitions and vote in referendum elections, and nonresidents can participate in circulating petitions, it can hardly be contended that the prohibition on nonresidents being signature gatherers is narrowly tailored to serve the interest of self-governance.  See We the People PAC, 40 F.4th at 22 ("[W]e fail to see why banning non-resident circulators is narrowly tailored to serve [the self-government] interest.  After all, only the individuals who must live under any resulting law may sign the petition, and only Maine voters may vote to approve any measure that does reach the ballot by way of a successful petition.").

16

Consequently, based on the record before the Court, the portion of Atlanta Municipal Code § 66-37(b) which restricts referendum petition signature gatherers to the City's residents is not narrowly tailored to serve the City's compelling interest in self-government.  Plaintiffs have established that they are likely to succeed in showing that the residency requirement for signature gatherers contained in Atlanta Municipal Code § 66-37(b) violates the First Amendment.

### B.   Plaintiffs Will Suffer Irreparable Injury in the Absence of an Injunction.

"[E]ven if Plaintiffs establish a likelihood of success on the merits, the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper."  Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000).  "[T]he asserted irreparable injury 'must be neither remote nor speculative, but actual and imminent.'"  Id. (quoting Ne. Fla. Chapter of the Ass'n of Gen. Contractors v. City of Jacksonville, 896 F.2d 1283, 1285 (11th Cir. 1990)).  In the context of constitutional claims, it is well-settled that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."  Elrod v. Burns, 427 U.S. 347, 373 (1976); see also Cate v. Oldham, 707 F.2d 1176, 1188 (11th Cir. 1983) (same).

17

The City argues in its initial response that because there is no statutory authority for the referendum petition for which Plaintiffs seek to gather signatures, Plaintiffs cannot show that any First Amendment injury will be redressed by a favorable decision.  City's Opp'n at 13-17.  In its Surreply, the City clarifies its argument by stating that

> [t]he City is not asking this Court to strike the referendum or reach the merits of its validity under Kemp v. Claxton . . . .  The ultimate validity of the referendum is not before the Court in this case.  However, the fact that the referendum is invalid, and therefore cannot be placed on the ballot, is a factor this Court should consider when weighing the equities and irreparable harm of the preliminary injunction motion.

City's Surreply at 1 (footnote omitted).

The Georgia Constitution provides that "[t]he General Assembly may provide by law for the self-government of municipalities and to that end is expressly given the authority to delegate its power so that matters pertaining to municipalities may be dealt with without the necessity of action by the General Assembly."  Ga. Const. art. IX, § II, para. II.  Under the Municipal Home Rule Act of 1965, "a municipal corporation may, as an incident of its home rule power, amend its charter by following" one of two alternative procedures.  O.C.G.A. § 36-35-3(b).  One of those procedures is the amendment to ordinances adopted by the

municipal governing authority.  Id. § 36-35-3(b)(1).  The Municipal Home Rule

Act goes on to state:

> Amendments to charters or amendments to or repeals of ordinances,
> resolutions, or regulations adopted pursuant to subsection (a) of this
> Code section may be initiated by a petition, filed with the governing
> authority of the municipal corporation, containing, in cases of
> municipal corporations . . . with a population of more than 100,000, at
> least 15 percent of the electors registered to vote in the last general
> municipal election.

Id. § 36-35-3(b)(2)(A).

In Kemp v. City of Claxton, 269 Ga. 173 (1998), the Supreme Court of

Georgia reviewed the decision of a superior court which determined that the

above-quoted language permitted city residents and business owners to submit a

petition to amend a resolution of the city council to close certain railroad grade

crossings.  Id. at 173-74.  The Supreme Court held that the superior court erred and

that the municipal home rule provision allowing petitions to repeal city ordinances

applied only to amendments to city charters and not to ordinances in general.

Id. at 175-76.  It is based on this precedent that the City argues that the proposed

petition for a referendum election to repeal City of Atlanta Ordinance 21-O-0367

submitted to the Municipal Clerk on June 7, 2023, is not authorized by the

Municipal Home Rule Act of 1965 because it does not seek to repeal an amendment to the City charter.[8]  City's Opp'n at 13-15.

The continuing viability of Kemp was called into question in the recent decision of the Supreme Court of Georgia in Camden County v. Sweatt, 315 Ga. 498 (2023).  In Sweatt, a county board of commissioners approved a resolution authorizing an agreement with a private corporation for the purchase of land to construct a commercial rocket launch facility in the county.  Id. at 499.  A group of citizens opposed to the project filed a petition under Article IX, Section II, Paragraph I of the Georgia Constitution, the home rule provision affecting counties, seeking a referendum on the issue of whether the board's resolution should be repealed.  Id.  The county probate judge approved the petition, the superior court denied the county's effort to reverse that decision, and the referendum was upheld.  Id. at 499-500.

On appeal of the superior court's decision to deny declaratory relief, and after a fulsome discussion of the history of home rule in Georgia, the Supreme Court of Georgia reviewed the language of Article IX, Section II, Paragraph I of

---

[8] Although no longer a party to this case, the State of Georgia has filed an amicus brief also arguing that the City "has no independent authority to allow a referendum that does not comply with state law."  Non-Party State of Georgia's Amicus Br. ("Amicus Br.") [Doc. 25] at 2.

the Georgia Constitution (the "Home Rule Paragraphs"), applicable to counties in

the Georgia Constitution.  Unlike the Municipal Home Rule Act of 1965, the

county Home Rule Paragraphs provide that a county, as part of its home rule

power, may "amend or repeal the local acts applicable to its governing authority by

follow either of the procedures hereinafter set forth[.]"  Ga. Const. art. IX, § I,

para. I(b).  One of those procedures includes "[a]mendments to or repeals of such

local acts or ordinances, resolutions, or regulations adopted pursuant to

subparagraph (a) . . . by a petition filed with the judge of the probate court of the

county" containing a required number of signatures of electors depending upon the

population of the county.  Id., art. IX, § II, para. II(b)(2).  The Supreme Court

found that this language "plainly grants repeal and amendment powers to the

electorate for 'ordinances, resolutions, or regulations adopted pursuant to

subparagraph (a) in addition to local acts.' "  Sweatt, 315 Ga. at 510.   The

Supreme Court of Georgia also stated as follows:

> We recognize that our holding here is in tension with Kemp, 269 Ga. at
> 175-76 (1), in which we construed the statutory home rule provisions
> applicable to municipalities under the Municipal Home Rule Act.  That
> act contains a provision somewhat similar to subparagraph (b) of the
> Home Rule Paragraph and states that "a municipal corporation may, as
> an incident of its home rule power, amend its charter by following either
> of [two] procedures."  O.C.G.A. § 36-35-3 (b).  One of the prescribed
> procedures provides that

21

> [a]mendments to charters or amendments to or repeals of
> ordinances, resolutions, or regulations adopted pursuant to
> subsection (a) of this Code section may be initiated by a
> petition, filed with the governing authority of the
> municipal corporation ....

O.C.G.A. § 36-35-3 (b) (2) (A).

In <u>Kemp</u>, we determined that in granting a writ of mandamus to compel consideration of a petition to repeal a city ordinance under the Municipal Home Rule Act, the trial court had erroneously relied upon "the reference to 'amendments to or repeals of ordinances, resolutions, or regulations,' found in OCGA § 36-35-3 (b) (2) (A)." <u>Kemp</u>, 269 Ga. at 176 (1). Reasoning that "the very concept of home rule suggests that the provisions of (b) (2) apply only to charter amendments," the Court determined that because "[a]ll of O.C.G.A. § 36-35-3 (b) is prefaced by a statement that what follows are the methods by which a municipal corporation may 'amend its charter,'" the introductory language showed "that the petition and referendum provision is intended to be available only when the proposed amendment is intended to affect a city charter." <u>Id.</u> Accordingly, the Court reversed the grant of mandamus, holding "[a]s we must strictly construe the grant of legislative power to the governing authority, [the Court] must reject plaintiffs' argument that the electorate can directly exercise such general legislative power," and that "[t]he petition procedure of O.C.G.A. § 36-35-3 (b) (2) applies only to amendments to municipal charters." <u>Id.</u>

Because, here, we are construing a completely separate legal provision, the holding in <u>Kemp</u> does not control our decision in this case, and we need not consider at this time whether <u>Kemp</u> should be overruled in light of today's ruling. Nevertheless, we note that in reaching the holding in <u>Kemp</u>, this Court dismissed some of the canons of construction we apply in this case, stating, instead, that "the spirit and intent of the legislation prevails over a literal reading of the language," and "[t]he legislative intent will be effectuated even if some language must be eliminated." <u>Kemp</u>, 269 Ga. at 175-76 (1).

Sweatt, 315 Ga. at 511-13 (footnote and parallel citations omitted).

Of course, this Court is "bound by the decisions of the Supreme Court of Georgia on questions of Georgia law," Gonzalez v. Governor of Georgia, 978 F.3d 1266, 1271 (11th Cir. 2020) (citation omitted), and the Georgia Supreme Court has not as yet overruled Kemp. But the issue of the ultimate validity of the proposed referendum to City of Atlanta Ordinance 21-O-0367 is not ripe for decision by this Court. In addition, as pointed out by Plaintiffs in their Reply Brief, the City of Atlanta Charter appears to authorize petitions for referendum elections to repeal ordinances:

Section 2-501 – Initiative and referendum.

(a)   The council shall by ordinance prescribe procedures to govern the initiation, adoption, and repeal of ordinances by the electorate, and the counsel shall authorize an initiative or referendum election on petition of at least 15 percent of the registered voters qualified to vote in the preceding general municipal election.

City of Atlanta Charter § 2-501, enacted by the Georgia General Assembly in 1996 Ga. Laws 4470, 4493. In its amicus brief, the State of Georgia argues that this does not provide the City with "alternative authority to conduct a referendum process outside the general law contained in O.C.G.A. § 36-35-3." Amicus Br. at 2. Once again, the issue of the validity of the proposed referendum is not currently

23

before this Court, but only the issue of whether Atlanta Municipal Code § 66-37(b) violates the First Amendment by requiring signature gatherers to be City residents.

The City also argues that the proposed referendum is futile because <u>if</u> the required number of signatures are obtained (15 percent of the registered voters of the City) and <u>if</u> the referendum passes, the repeal of City of Atlanta Ordinance 21-O-0367 would result in the impairment of the lease agreement between the Mayor and the Atlanta Police Federation. City's Opp'n at 17-19. The issue of whether the repeal of City of Atlanta Ordinance 21-O-0367 will result in the impairment of an existing contract also is not ripe for review by this Court. See <u>SDDS, Inc. v. State of S.D.</u>, 994 F.2d 486, 493 (8th Cir. 1993) ("The State admits in its brief that it would have been improper for Judge Zinter to rule on the constitutionality of the Referendum because that issue was not yet ripe.").

As discussed in the previous section, the inability of nonresidents to gather signatures for the proposed referendum impacts their core political speech by making it more difficult to obtain the required number of signatures to place the initiative on the ballot. Because this Court finds that Plaintiffs are likely to succeed on their First Amendment claim, Plaintiffs have established irreparable harm.

### C.   The Balance of Equities and the Public Interest Favor a Preliminary Injunction.

The remaining two factors of the preliminary injunction standard, "harm to the opposing party and weighing the public interest . . . merge when the Government is the opposing party." Nken v. Holder, 556 U.S. 418, 435 (2009); see also Swain v. Junior, 958 F.3d 1081, 1091 (11th Cir. 2020) ("[W]here the government is the party opposing the preliminary injunction, its interest and harm merge with the public interest."). The City argues that its interest in maintaining the integrity of its political process and not disrupting the ongoing signature gathering process outweigh Plaintiffs' First Amendment rights. City's Opp'n at 19. This Court disagrees.

The City has offered no specifics as to why permitting nonresident Plaintiffs to gather signatures on a petition that must be signed by residents of the City will cause any disruption to the political process. The City Council will have 50 days to determine the validity of the petition once it is filed (assuming that the requisite number of signatures can be gathered, which is far from certain), and one week after the determination of the petition's validity, the City Council would then set a date for the special election. Atlanta Municipal Code § 66-37(a). Unlike those cases which deny the entry of preliminary injunctions because the request comes

too close to a scheduled election based on the Purcell[9] principle, there can be no special election scheduled for any referendum unless and until the requisite number of signatures of City residents are gathered and the City Council determines the petition's validity.  The only delay that would occur based upon the entry of a preliminary injunction is the additional time that would be provided for the City to approve the distribution of another referendum petition that removes the residency requirement for signature gatherers and a new 60-day period for Plaintiffs to collect signatures.  Because there is no election that is "close at hand," see League of Women Voters, of Fla., Inc. v. Fla. Sec'y of State, 32 F.4th 1363, 1371-72 (11th Cir. 2022), the burden on the City to approve the issuance of another referendum petition and await the 60-day period for its filing (if enough signatures can be collected) is significantly outweighed by the First Amendment rights of Plaintiffs who have been denied the ability to gather signatures for the petition.

Consequently, the Court finds that Plaintiffs have satisfied all four of the required factors for the issuance of a preliminary injunction in this case.

---

[9] Purcell v. Gonzalez, 549 U.S. 1 (2006).

**D.    The Ordinance is Severable.**

Finally, the City contends that if the Court strikes down the residency

requirement for signatures gatherers in Atlanta Municipal Code § 66-37(b), then it

would be required to strike the petition ordinance in its entirety.  City's Opp'n at

21-23.  "Severability of a local ordinance is a question of state law."  Club

Madonna Inc. v. City of Miami Beach, 42 F.4th 1231, 1260 (11th Cir. 2022)

(citations omitted).  "Under Georgia law, provisions of a statute or ordinance can

be severed if those provisions are not mutually dependent on the remaining

provisions and legislative intent is not compromised."  Covent Christian

Ministries, Inc. v. City of Marietta, 654 F.3d 1231, 1240 (11th Cir. 2011) (citations

omitted).  Georgia law favors the severance of constitutionally infirm provisions of

a law as a means of allowing the non-offending portions of the law to remain in

effect.  Union City Bd. of Zoning Appeals v. Justice Outdoor Displays, Inc., 266

Ga. 393, 403-04 (1996).

In this case, striking only the portion of the sentence in Atlanta Municipal

Code § 66-37(b) that requires signature gatherers to be residents of the City of

Atlanta does not prevent the enforcement of the remainder of the ordinance nor are

the remaining provisions dependent upon the excised provision.  The City argues

that this would frustrate the provision of the State's Municipal Home Rule Act of

1965, which requires that signatures must be collected inside city limits.  City's

Opp'n at 22 (citing O.C.G.A. § 36-35-3(b)(2)(C)).  The City's argument fails.

First, the City ignores its own Code of Ordinances, which provides for severability

as follows:

> Sec. 1-10 – Severability of Code.
>
> The sections, paragraphs, sentences, clauses and phrases of this Code are severable, and if any phrase, clause, sentence, paragraph or section of this Code shall be declared unconstitutional, invalid or otherwise unenforceable by the valid judgment or decree of any court of competent jurisdiction, that unconstitutionality, invalidity or unenforceability shall not affect any of the remaining phrases, clauses, sentences, paragraphs or sections of this Code, since they would have been enacted without the incorporation in this Code of the unconstitutional, invalid or unenforceable phrase, clause, sentence, paragraph or section.

City of Atlanta, Code of Ordinances § 1-10.  Clearly, the severing of the

unconstitutional portion of a single sentence from Atlanta Municipal Code § 66-

37(b) is consistent with the direction contained in the City's Code of Ordinances.

Moreover, to the  extent that the City argues that the Municipal Home Rule

Act does not contain its own severability clause, City's Opp'n at 23, it overlooks

the fact that the Georgia Code contains a general provision that presumes all

statutes are severable unless otherwise specifically indicated otherwise.

> Except as otherwise specifically provided in this Code or in an Act or resolution of the General Assembly, in the event any title, chapter, article, part, subpart, Code section, subsection, paragraph,

subparagraph, item, sentence, clause, phrase, or word of this Code or of any Act or resolution of the General Assembly is declared or adjudged to be invalid or unconstitutional, such declaration or adjudication shall not affect the remaining portions of this Code or of such Act or resolution, which shall remain of full force and effect as if such portion so declared or adjudged invalid or unconstitutional were not originally a part of this Code or of such Act or resolution. The General Assembly declares that it would have enacted the remaining parts of this Code if it had known that such portion hereof would be declared or adjudged invalid or unconstitutional. The General Assembly further declares that it would have enacted the remaining parts of any other Act or resolution if it had known that such portion thereof would be declared or adjudged invalid or unconstitutional unless such Act or resolution contains an express provision to the contrary.

O.C.G.A. § 1-1-3. A number of cases have been decided in Georgia in which a portion of a municipal ordinance has been declared unconstitutional and severed from the remainder of the ordinance. See, e.g., Covenant Christian Ministries, 854 F.3d at 1240 (concluding that the district court did not err by severing the City's ordinance by striking only those portions which offended federal law); Lamar Advert. Co. v. City of Douglasville, 254 F. Supp. 2d 1321, 1338 (N.D. Ga. 2003) (severing five unconstitutional parts of the Douglasville sign ordinance from other provisions that were not mutually dependent on them); Union City Bd. of Zoning Appeals v. Justice Outdoor Displays, Inc., 266 Ga. 393, 396-99 (1996) (concluding that the stated purpose of the act was still served after the unconstitutional portions of the ordinance were severed).

29

Therefore, the Court will sever only that portion of the sentence from Atlanta Municipal Code § 66-37(b) which the Court finds violates the First Amendment: "and to swear that such person is a resident of the city[.]"

## IV.   CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Plaintiffs' Motion for Preliminary Injunction [Doc. 2] is **GRANTED**.

Defendant City of Atlanta is **PRELIMINARILY ENJOINED** from enforcing the portion of City of Atlanta, Ga. Code of Ordinances § 66-37(b) that requires the person collecting signatures to swear that such person is a resident of the City of Atlanta.

The Court further **ORDERS** the following as a part of its preliminary injunction relief:

(1)   The City of Atlanta Municipal Clerk shall issue official copies of the referendum petition to repeal City of Atlanta Ordinance 21-O-0367 (the "Referendum Petition") that removes the requirement that the person collecting signatures swear that such person is a resident of the City of Atlanta.

(2)   The 60-day statutory period for the collection of signatures on the Referendum Petition shall restart on the date the Municipal Clerk

30

provides official copies of the Referendum Petition that do not contain the requirement that the person collecting signatures must be a City of Atlanta resident.

(3)   All properly collected and valid signatures that have been obtained since the Municipal Clerk's distribution of the petition to repeal City of Atlanta Ordinance 21-O-0367 on June 21, 2023, shall be counted with the properly collected and valid signatures on the Referendum Petition issued pursuant to this Court's Order to determine whether 15 percent of the registered voters in the City of Atlanta have requested the repeal of City of Atlanta Ordinance 21-O-0367.

(4)   Nothing in this Order shall affect the ability of the City of Atlanta to implement all of the remaining portions of City of Atlanta, Code of Ordinances § 66-37(b) except for the portion which states, "to swear that such person is a resident of the city[.]" More specifically, nothing in this Order prevents the Municipal Clerk from "providing a place on each form for the person collecting signatures to provide such

31

person's name, street address, city, county, state, ZIP code and

telephone number" or for that person to swear "that the signatures

were collected inside the boundaries of the city.

**IT IS SO ORDERED**, this 27th day of July, 2023.

_____
MARK H. COHEN
United States District Judge

32

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

LISA BAKER, JACQUELINE
DOUGHTERY, KENYANNA
JONES, and AMELIA WELTNER,

    Plaintiffs

v.

CITY OF ATLANTA,

    Defendants.

Case No. 1:23-cv-2999-MHC

## **DEFENDANT CITY OF ATLANTA'S NOTICE OF APPEAL**

Robert L. Ashe
Ga. Bar No. 208077
ashe@bmelaw.com
Jane D. "Danny" Vincent
Ga. Bar No. 380850
vincent@bmelaw.com
Matthew R. Sellers
Ga. Bar. No. 691202
sellers@bmelaw.com

BONDURANT MIXSON & ELMORE LLP
1201 W. Peachtree St. NE, Suite 3900
Atlanta, GA 30309
404-881-4100

*Attorneys for Defendant City of Atlanta*

#3564218v1

39

Defendant City of Atlanta gives notice that it is taking an appeal from this Court's order [Doc. 26] granting Plaintiffs' Motion for Preliminary Injunction [Doc. 2] to the United States Court of Appeals for the Eleventh Circuit.

This 28th day of July, 2023.

*/s/ Robert L. Ashe III*
Robert L. Ashe III
Georgia Bar No. 208077
ashe@bmelaw.com
Jane D. Vincent
Ga. Bar No. 380850
vincent@bmelaw.com
Matthew R. Sellers
Georgia Bar No. 691202
sellers@bmelaw.com
Bondurant, Mixson & Elmore, LLP
3900 One Atlantic Center
1201 W. Peachtree Street, NW
Atlanta, GA  30309
(404) 881-4100 – Telephone
(404) 881-4111 – Facsimile

*Attorneys for the City of Atlanta*

1

## CERTIFICATE OF SERVICE

I hereby certify that, on July 28, 2023, I served a true and correct copy of the within and foregoing **DEFENDANT CITY OF ATLANTA'S NOTICE OF APPEAL** by filing it with the Court's electronic filing system, which will serve a copy on all counsel of record.

_/s/ Robert L. Ashe III_
Robert L. Ashe III
Georgia Bar No. 208077