IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| LISA BAKER, JACQUELINE DOUGHTERTY, KENYANNA JONES, and AMERLIA WELTNER,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF ATLANTA,<br><br>Defendant. | CIVIL ACTION FILE<br><br>NO. 1:23-CV-2999-MHC |

## ORDER

This case comes before the Court on Defendant City of Atlanta (the "City")'s Motion to Stay the Preliminary Injunction ("Mot. to Stay") [Doc. 29].

## I. BACKGROUND

On July 27, 2023, this Court granted Plaintiffs' Motion for Preliminary Injunction [Doc. 2], and preliminarily enjoined the City from enforcing the portion of the restriction in City of Atlanta, Code of Ordinances ("Atlanta Municipal Code") § 66-37(b) which bars Plaintiffs as nonresidents of the City from collecting signatures on a referendum petition to repeal City of Atlanta Ordinance 21-O-0367. July 27, 2023, Order ("Preliminary Injunction Order") [Doc. 26]. The Preliminary Injunction Order (1) directs the City to issue official copies of a new

referendum petition that removes the requirement that persons collecting signatures swear that they are residents of the City, (2) starts the 60-day statutory period for the collection of signatures on the revised petition at the time of its issuance, and (3) instructs that valid signatures previously collected on the petition approved by the Municipal Clerk on June 21, 2023, be counted along with the valid signatures collected on the petition issued in accordance with this Court's preliminary injunction. Id. The City filed a Notice of Appeal of that Order on July 28, 2023 [Doc. 28].

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 62(d) governs the granting of a stay of an injunction pending appeal and provides in relevant part:

> While an appeal is pending from an interlocutory order or final judgment that grants, continues, modifies, refuses, dissolves, or refuses to dissolve or modify an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights.

FED. R. CIV. P. 62(d). "A stay is not a matter of right, even if irreparable injury might otherwise result." Nken v. Holder, 556 U.S. 418, 434 (2009) (quoting Virginian Ry. Co. v. United States, 272 U.S. 658, 672 (1926)). "It is instead an exercise of judicial discretion, and the propriety of its issu[ance] is dependent upon

the circumstances of the particular case." Id. (internal punctuation and citation omitted).

In reviewing a motion to stay an injunction pending appeal, a court must consider "(1) whether the stay applicant has made a strong showing that it is likely to succeed on the merits, (2) whether the applicant will be irreparably injured absent a stay, (3) whether [the] issuance of the stay will substantially injure the other parties interested in the proceeding, and (4) where the public interest lies." Democratic Exec. Com. of Fla. v. Lee, 915 F.3d 1312, 1317 (11th Cir. 2019) (citing Nken, 556 U.S. at 434). The movant bears a "heavy burden" and "must establish each of these four elements in order to prevail." Larios v. Cox, 305 F. Supp. 2d 1335, 1336 (N.D. Ga. 2004) (citing Siegel v. Lepore, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc)); see also Nken, 556 U.S. at 433-34 ("The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion.") (quotations and citation omitted). The first two factors "are the most critical." Nken, 556 U.S. at 434; Lee, 915 F.3d at 1317. "It is not enough that the chance of success on the merits be better than negligible . . . . By the same token, simply showing some possibility of irreparable injury . . . fails to satisfy the second factor." Nken, 556 U.S. at 434-35 (citations and internal quotation marks omitted).

### III. DISCUSSION

#### A. Whether the City Has Made a Strong Showing That it is Likely to Succeed on the Merits of its Appeal

Although the City disagrees with the Court's determination that Plaintiffs are likely to succeed on the merits of their constitutional challenge to the City's residency restriction for signature gatherers, they do not present any additional legal argument as to why the Court's findings that strict scrutiny applies and that the residency restriction is not narrowly tailored to serve a compelling governmental interest are in error. Instead, the City argues with the remedy that the Court ordered as a part of Preliminary Injunction Order. Mot to Stay at 2 ("Assuming the Court is correct about the First Amendment, which the City respectfully disagrees with, the appropriate remedy would be to direct the City to issue a new petition without the residency requirement.").

The Court in fact ordered the City to issue a new petition without the residency requirement for signature gatherers, which the City has represented it did on July 27, 2023. Mot. to Stay at 2. The Court also directed that the 60-day statutory period for the collection of signatures restart on the date official copies of the new referendum petition were distributed by the Municipal Clerk and that all properly collected and valid signatures obtained since the Municipal Clerk distributed the initial petition on June 21, 2023, also be counted to determine

4

whether fifteen percent of the City's registered voters request repeal of City of Atlanta Ordinance 21-O-0367. Preliminary Injunction Order at 30-31. The City does not take exception to the issuance of a new petition that would reset the 60-day clock but objects to permitting the counting of previously collected valid signatures on the petition that was originally approved by the City. Mot. to Stay at 2. Alternatively, the City would not object to counting the previously collected signatures but only if the 60-day clock does not restart, which would leave only 24 days for Plaintiffs to gather signatures on the Referendum Petition that this Court directed to be issued. Id.

"Injunctive relief should be limited in scope to the extent necessary to protect the interests of the parties." Keener v. Convergys Corp., 342 F.3d 1264, 1269 (11th Cir. 2003). It is important to fashion the remedy to "match the perceived constitutional defect." Huffman, v. Pursue, Ltd., 420 U.S. 592, 599 (1975).

In this case, the First Amendment violation is the City's failure to permit nonresidents of the City to gather signatures of the City's residents on the referendum petition. In order to provide Plaintiffs with the ability to gather signatures in accordance with the other non-offending provisions of Atlanta Municipal Code § 66-37(b), it is necessary to permit them the full 60 days to

5

gather signatures; otherwise, they would be denied the ability to gather signatures for the maximum period of time permitted under the municipal code. Moreover, acceding to the City's demand that all previously collected signatures be thrown out if Plaintiffs are allowed the full 60 days to gather signatures would penalize both the persons who made the effort to gather these signatures as well as the City's residents who chose to sign the previous City-approved petition.

Regardless of the scope of the remedy ordered by the Court in an effort to rectify the City's unconstitutional action, the City has failed to make a strong showing that it is likely to succeed on the merits of its appeal, thereby failing to meet its burden to establish the first element of obtaining a stay.

**B.     Whether the City Will be Irreparably Injured Absent a Stay**

The City poses various speculative scenarios in which it asserts that the Court's preliminary injunctive relief will cause "hassle, confusion and expense" by "frustrat[ing] both the City and the petition supporters." Mot. to Stay at 3, 6. omitted). "[S]imply showing some possibility of irreparable injury . . . fails to satisfy the second factor." Nken, 556 U.S. at 434-35 (citation and quotation marks omitted).

First of all, the mere fact that a new petition has been issued to Plaintiffs to gather signatures for a 60-day period while permitting previously gathered valid

6

signatures also to be counted causes no irreparable injury to the City. None of the City's resources are being expended during the process of signature gathering and, unless valid signatures representing fifteen percent of the City's registered voters are obtained, no further action will be necessary.

Second, the City again raises the issue that the petition itself may be unlawful under existing Georgia Supreme Court precedent. Mot. to Stay at 4-5 (citing Kemp v. Claxton, 269 Ga. 173 (1998)). The City's shifting position with respect to the application of Kemp to this proceeding is evident from the following chronology: (1) in its initial response in opposition to Plaintiffs' Motion for Preliminary Injunction, the City argued that Plaintiffs could not show irreparable injury because the referendum petition was invalid under Kemp, Def.'s Resp. to Mot. for Prelim. Inj. [Doc. 15] at 13-17; (2) in its Sur-Reply, the City acknowledged that "[t]he ultimate validity of the referendum is not before the Court in this case" but was a factor to consider, Def.'s Sur-Reply to Mot. for Prelim. Inj. [Doc. 24] at 2; and (3) in its Motion to Stay, the City now argues that the potential invalidity of the referendum petition is a ground to stay any injunctive relief, Mot. to Stay at 5.

The Court notes that, on June 21, 2023, the City gave its initial approval and distributed official copies of the referendum petition to City residents to gather

7

signatures even though it apparently had every intention to later take the position that, if a sufficient number of valid signatures were gathered, the City would then declare the petition illegal. That could have resulted in a challenge to the City's refusal to accept the referendum petition in a subsequent state court proceeding in which, ultimately, the Georgia Supreme Court could consider whether (1) to overrule Kemp and conclude that there was authority for the referendum petition based upon its reasoning in the recent case of Camden Cnty. v. Sweatt, 315 Ga. 498 (2023), or (2) to reaffirm its twenty-five-year-old decision in Kemp and somehow distinguish the Home Rule Paragraphs in the Georgia Constitution analyzed in Sweatt from similar provisions in the Municipal Home Rule Act of 1965. This fact undermines the City's position the Court's injunctive relief creates "hassle, confusion, and expense," when these very same purported factors would have occurred following the 60-day signature gathering period from the City's June 21, 2023, approved petition, given the City's apparent position that both the City's originally-issued and Court-directed petitions are both illegal. The only difference from the Court's perspective is that the petition issued on June 21, 2023, likely violated Plaintiffs' First Amendment rights.

Consequently, the City's concern about this Court's Preliminary Injunction Order causing "hassle, confusion, and expense" because of the potential invalidity

8

of the petition is no different than what would have occurred without the injunction. It also must be emphasized that none of the City's concerns about a potential invalid referendum will ever come to pass unless and until the qualifying number of valid signatures are gathered by the petitioners. The City's real concern may be that now that nonresidents have the ability to gather signatures on the petition for the entire time that they would have been permitted to do so had their initial request been granted, there is an increased possibility that a sufficient number of valid signatures could be obtained. The Court again emphasizes that the issue about the actual validity of the referendum petition is not before this Court, and the City's ultimate determination of the petition's validity could be challenged in subsequent litigation regardless of whether this Court's Preliminary Injunction Order was in place.

As discussed in this Court's prior Preliminary Injunction Order, it is Plaintiffs, not the City, who would suffer irreparable harm by the failure to permit them to gather signatures for the sole reason that they are not City residents.[1]

---

[1] And the City's concern about a "potential action by the State against the City," Mot. to Stay at 2, is wildly speculative, particularly given that the State was "correctly dismissed" as a party to this case, Non-Party State of Ga.'s Amicus Br. [Doc. 25] at 1 n.1. The State will, no doubt, have the opportunity to support the City's argument that the referendum sought by both the original signature gatherers and by Plaintiffs are invalid in any future state litigation.

### C. Balance of Harms to Plaintiffs and the Public Interest

As previously indicated in the Court's Preliminary Injunction Order, the City offers no reason why permitting nonresident Plaintiffs to gather signatures on a petition that must be signed by City residents will cause any disruption in the City's political process or subvert the public interest.

### IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Defendant City of Atlanta's Motion to Stay the Preliminary Injunction [Doc. 29] is **DENIED**.

**IT IS SO ORDERED** this 14th day of August, 2023.

_____
MARK H. COHEN
United States District Judge