IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| LISA BAKER, et. al, et. al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) CIVIL ACTION FILE NO.: |
| v. | ) 1:23-CV-2999-MHC |
| | ) |
| CITY OF ATLANTA, | ) |
| | ) |
| Defendant. | ) |

## COP CITY VOTE COALITION'S EMERGENCY
## MOTION TO INTERVENE AND FOR INJUNCTIVE RELIEF

Today, the Cop City Vote Coalition ("the Coalition") turned in signed copies of the petition that is the subject of this litigation. While the City of Atlanta accepted the petitions, it emphatically stated that it intended to store those petitions only, and make no attempt to begin the verification process. Because the City of Atlanta's decision violated the First Amendment rights of both the Coalition itself and the individual voters whose interests the Coalition serves, the Coalition now moves this Court to allow it to intervene in this lawsuit, and for limited injunctive relief.

### BACKGROUND

As this Court is already aware, on July 27, 2023, it granted Plaintiffs' motion for preliminary injunction and ordered, among other things, that the

Defendant shall issue official copies of the referendum petition at issue in this case that remove the requirement that the person collecting signatures swear that such person is a resident of the City of Atlanta and that the 60-day statutory period for the collection of signatures on the Referendum Petition shall restart on the date the Municipal Clerk provides official copies of the revised petition. As a result of this Court's ruling, the deadline for the petition's proponents to submit the petition copies to Atlanta moved from August 21 to September 25.

Based on this Court's ruling that the 60-day-statutory period for the collection of signatures had restarted, Cop City Vote Coalition, a group of local, statewide, and regional organizations and individuals who have sponsored the petition and led its effort to obtain sufficient signatures, did not submit the signatures they collected on August 21, instead electing to collect and vet additional signatures and submit the petitions on or before the Court-ordered deadline of September 25.

As this Court also knows, Atlanta moved for a stay of the District Court's order, which this Court denied. However, immediately before Labor Day Weekend, the Eleventh Circuit granted a stay in a brief order stating simply that a stay had been issued.

The effect of the Eleventh Circuit's order is unclear. Atlanta's motion for stay focused primarily on its claim that the residency requirement did not violate

the First Amendment, and not on the extension of the time to file the petitions. Nonetheless, the perfunctory stay order could be read to mean that extension of the deadline was stayed as well, which in turn arguably means that, at least until the stay is lifted, the deadline to collect signatures has reverted to August 21, and thus the Coalition, despite complying with this Court's order, has been retroactively made late in turning in its signed copies of the petition.

Immediately upon receiving the Eleventh Circuit's order, the Coalition reached out to Atlanta to see if it could provide clarity on how it interpreted the Eleventh Circuit's order.[1] The City ignored the Coalition's inquiries until late last week, when an attorney for the City indicated that the City would not commit itself to any position on whether a prompt submission by the Coalition would be treated as timely.

As a result, the Coalition drastically expedited its effort to turn in the petitions, and, by working tirelessly last week, today, September 11, arrived at the clerk's office to tender petitions containing 116,000 signatures, far in excess of the amount required to place the proposed referendum on the ballot. When the

---

[1] Given the time-sensitive nature of this filing, the Coalition is not attaching affidavits demonstrating each of the recent factual developments in the petition effort. Should the veracity of any factual claims contained in this motion prove determinative of the relief requested, the Coalition requests an opportunity to present witnesses in either a live or virtual hearing, or to supplement this motion.

3

Coalition arrived at the Clerk's Office, Atlanta surprised the Coalition by handing it a piece of paper explaining that Atlanta would accept the petitions for safekeeping but had no intention of beginning the verification process until the conclusion of the Eleventh Circuit appeal. Atlanta has purported to claim that the Georgia code prohibits it from processing the signatures because the petitions were not handed in by August 21.

In response, the Coalition informed Atlanta that it did have authority to begin processing the petitions, because any interpretation of the statute that would compel Atlanta to reject the petitions based solely on that fact that they were turned in in compliance with this Court's earlier order would violate the First Amendment. Rejecting the petitions plainly burdens the expressive rights of every individual who has signed those petitions, and Atlanta has not even attempted to articulate a compelling government interest in punishing Atlanta voters because the Coalition turned in their petitions in compliance with this Court's order.

In addition, the Coalition explained to Atlanta that if it believed in good faith that it could not process the petitions without violating the Georgia code, then the Coalition and Atlanta could jointly move for injunctive relief from this Court specifying that Atlanta is not obligated to refuse the process the petitions based solely on the fact that they were turned in after August 21. Atlanta refused to

request such relief. The Coalition now moves to intervene in this action and request injunctive relief.

## ARGUMENT

### I. Intervention is Warranted Under Rule 24

The Coalition requests that this Court permit it to intervene in this action under Federal Rule of Civil Procedure 24. Under Rule 24(a)(2), a court must permit intervention to anyone who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interests, unless existing parties adequately represent that interest."

Here, the requirements of mandatory intervention are met. The Coalition plainly has both organizational and representational interests in the success of the petition, which it has been spearheading. The course of proceedings in this action raises the palpable possibility that this Court's order extending the deadline for submission of the petition will ultimately be invalidated or modified, and that the Coalition, despite relying in good faith on this Court's order, will be retroactively found to have untimely submitted its petition.

While Plaintiffs in this case no doubt share a similar interest to the Coalition in seeing the petition approved, Plaintiffs' interests differ in a critical way from the Coalition: Plaintiffs desire to participate in the referendum process as non-

residents, and thus must necessarily pursue relief that includes upholding the portion of this Court's order permitting nonresident participation. While the Coalition supports Plaintiffs in their efforts, the Coalition has an independent interest in seeing that the petition is treated as timely-submitted, regardless of whether non-residents are permitted to participate in the process. Because the Plaintiffs do not share that interest with the Coalition, they cannot reasonably be expected to adequately protect that interest. Intervention, therefore, is mandatory.

Even if intervention were not mandatory under Rule 24(a), it would also be appropriate under Rule 24(b), which governs permissive intervention. Under Rule 24(b)(1)(B), the Coalition shares an interest in the "question of law or fact" as to whether Atlanta must accept a petition submitted after August 21. Meanwhile, under Rule 24(b)(3), Atlanta will experience no delay or prejudice from the Coalition's intervention because the relief that the Coalition seeks in this case can be entirely resolved by this Court immediately, and well before this matter is ultimately adjudicated by the Eleventh Circuit and then remanded to this Court for further consideration. Permissive intervention will in no way delay this proceeding, and thus is warranted here. The Coalition therefore respectfully requests that this Court grant the Coalition's motion to intervene.

**II.     This Court should enter an injunction instructing Atlanta not to reject the petitions submitted on September 11 on the sole basis that they have not been timely submitted.**

After this Court grants the Coalition's motion to intervene, it ought next instruct the City of Atlanta that it may permissibly begin verifying the Coalitions' petition.

As this Court has already explained, restrictions on the ability to petition the government impinge on First Amendment interests when they make "it less likely that the proponents of a petition can gather sufficient signatures to place the initiative on the ballot." #26, at 12. Here, the City of Atlanta's determination that it is obligated to reject the petitions solely because they were submitted after August 21 but before September 25 would completely eliminate the ability of 116,000 voters to place an initiative they favor on the ballot, and it restricts the Coalition's right to petition the government on the voters' behalf.

Meanwhile, such a rejection would serve no cognizable government interest. Such votes would be considered invalid for the sole reason that the Coalition reasonably relied on a order of this Court setting the due date of its submission. Neither the City of Atlanta nor this Court has a compelling government interest in undermining reliance interests on court orders. Atlanta has not even attempted to present a compelling government interest and it is in fact inconvenienced by its

7

decision today, because it now must indefinitely store yet not act on the submitted petitions.

Instructing the City of Atlanta to begin verification would not pose any burden on Atlanta, which has already publicly committed to reviewing each of the signatures submitted. Meanwhile, pretermitting the validity of any of Atlanta's proffered reasons for why it has a compelling interest in not letting nonresidents participate in the referendum process, none of these reasons support denying injunctive relief here. Atlanta has offered the Eleventh Circuit several reasons why allowing nonresidents to participate would complicate the verification process, but these purported harms stem from the non-residency portion of this Court's order, not from its extension of the submission deadline. The only reason Atlanta offers in its merits brief to the Eleventh Circuit that applies specifically to a deadline extension is that allowing rolling submissions would create ambiguity. But here, the Coalition has submitted its entire signature set this morning. It is Atlanta that is introducing ambiguity and delay by mothballing the petitions.

The sole effect of an injunction instructing Atlanta not to reject the signatures submitted today as untimely would be to prevent the Coalition and the voters whose signatures it collected from being harmed by their reasonable reliance on this Court's order. This Court should enter injunctive relief to that effect.

### III.   This Court has jurisdiction to grant injunctive relief.

Atlanta suggested today to undersigned counsel that this Court may be without power to entertain the requested relief, because its prior order in this action is on appeal. Atlanta is incorrect. The Supreme Court has made clear in *Griggs v. Provident* that the filing of an effective notice of appeal divests a district court only of its control over those aspects of the case involved in the appeal. 459 U.S. 56 (1982). Here, the appeal concerns whether the plaintiffs, non-Atlanta residents, have a right to participate in the referendum process. This motion involves an entirely separate question; whether Atlanta refusing to accept the Coalition's petitions solely on the basis that the Coalition turned in its signatures in reliance on this Court's earlier order places an undue burden on Atlanta resident's (and the Coalition's) First Amendment rights. Simply put, the present motion involves a separate Constitutional claim brought on behalf of a different set of individuals (non-residents vs. residents) and requesting considerably more limited relief (solely an injunction preventing the Coalition from being prejudiced from relying on this Court's earlier ruling). Or put another way, this Court granting the Coalition's proposed relief in full would in no way moot or undermine the Eleventh Circuit appeal. Each of the issues presented in that appeal would remain pending and ripe for that court's review.

Notably, however, even if this Court were to agree with Atlanta that it is not currently empowered to grant the relief requested, this Court could simply follow Eleventh Circuit Rule 12.1.1, which specifies that where a district court concludes that it lacks authority to grant requested relief because an appeal is pending, it may issue an indicative ruling stating that it intends to grant the requested relief upon remand from the Eleventh Circuit. For example, if this Court were to determine that if the Eleventh Circuit reverses and remands its earlier order, it would then enter significantly more limited injunctive relief instructing Atlanta to process the petitions submitted today, the Eleventh Circuit Rules and IOPs specifically authorize the Court to make such a determination now.

## CONCLUSION

The Coalition requests that this Court issue an order: (1) granting the Coalition the right to intervene in this action; and (2) instructing the City of Atlanta not to refuse to process the petitions submitted on September 11, 2023 on the sole basis that they have been submitted after August 21, 2023.

If this Court concludes it does not currently have jurisdiction to order such relief, then the Coalition requests that this Court issue an indicative ruling stating that if its earlier order is reversed and remanded, this Court will issue a significantly-more-limited injunction instructing Atlanta to begin processing the September 11 petitions.

Respectfully submitted, this 11th day of September, 2023.

        Respectfully submitted,

        <u>/s/ Kurt Kastorf</u>
        Kurt Kastorf
        KASTORF LAW, LLC
        1387 Iverson Street, N.E., Suite 100
        Atlanta, GA 30307
        Telephone: 404-900-0330
        kurt@kastorflaw.com

        Counsel for Cop City Vote Coalition

## CERTIFICATE OF SERVICE

I hereby certify that on this date I electronically filed the foregoing pleading with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to all counsel of record.

This 11th day of September, 2023.

        Respectfully submitted,

        /s/ Kurt Kastorf
        Kurt Kastorf
        KASTORF LAW, LLC
        1387 Iverson Street, N.E., Suite 100
        Atlanta, GA 30307
        Telephone: 404-900-0330
        kurt@kastorflaw.com

        Counsel for Cop City Vote Coalition