**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| LISA BAKER, JACQUELINE DOUGHTERY, KENYANNA JONES, and AMELIA WELTNER,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF ATLANTA,<br><br>Defendants. | Case No. 1:23-cv-2999-MHC |

**DEFENDANT CITY OF ATLANTA'S OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND**


Robert L. Ashe
Ga. Bar No. 208077
ashe@bmelaw.com
Jane D. "Danny" Vincent
Ga. Bar No. 380850
vincent@bmelaw.com
Matthew R. Sellers
Ga. Bar. No. 691202
sellers@bmelaw.com

BONDURANT MIXSON & ELMORE LLP
1201 W. Peachtree St. NE, Suite 3900
Atlanta, GA 30309
404-881-4100

*Attorneys for Defendant City of Atlanta*

Defendant the City of Atlanta ("City") asks the Court to deny Plaintiffs' late-breaking request for leave to amend. This case is all but over. From the start, this case has been about whether Plaintiffs could collect petition signatures to compel a referendum to repeal a City ordinance. But that petition drive is long since over. More directly, the Eleventh Circuit confirmed that Georgia law does not authorize a citizen referendum to repeal a municipal ordinance. *See Baker v. City of Atlanta*, 164 F.4th 850 (11th Cir. 2026). No relief this Court could award would turn back the clock to restart the petition drive or allow Plaintiffs to participate in a petition drive that was not authorized by Georgia law. All that remains is to apply the Eleventh Circuit's ruling to hold that Plaintiffs' First Amendment rights were not violated. Allowing an amendment would only delay the inevitable dismissal of this case. The Court should avoid further futile proceedings and deny leave to amend.

## BACKGROUND

This case concerns the City's Public Safety Training Center, a state-of-the-art training facility for first responders built on City property in DeKalb County, Georgia. The Training Center met the City's need for new, modern training facilities for its police, firefighters, and emergency services. The Training Center has been complete and operational for over a year.[1]

---

[1] Shaddi Abusaid, *From Skid Pad to Train Car: How the Public Safety Training Center is Used*, Atlanta Journal-Constitution (May 12, 2026), available at:

When this case began three years ago, the Training Center was still under construction. Plaintiffs, all of whom live near the Training Center, opposed it. Doc. 1 at 1. They supported a citizen petition that circulated in 2023 to compel the City to hold a referendum to repeal a local ordinance that authorized the lease of the property for the construction of the facility. *Id.* ¶¶ 8, 17, 20, 27, 32, 35. They sought to gather signatures to compel the referendum.

The City code regulates citizen petitions to hold a referendum. Under City of Atlanta Code of Ordinances § 66-37(b), a petition form must include a place for the collector to "swear that such person is a resident of the city and that the signatures were collected inside the boundaries of the city." As in past briefing, the City calls this the "residency requirement." The residency requirement in the City ordinance comes verbatim from state law governing citizen referendum petitions. *See* O.C.G.A. § 36-35-3(b)(2)(C).

Plaintiffs believed that the residency requirement prevented them from collecting petition signatures, and so they brought this litigation over three years ago to challenge the residency requirement. They sought only prospective relief, in keeping with their goal of assisting with the then-ongoing petition effort. Doc. 1 at 14. They did not ask for damages. *Id.*

---

https://www.ajc.com/news/2026/05/from-skid-pad-to-train-car-how-the-public-safety-training-center-is-used/.

This Court entered a preliminary injunction, but the Eleventh Circuit reversed. *See Baker*, 164 F.4th at 855. The Eleventh Circuit held, among other things, that Plaintiffs could not show irreparable harm because "plaintiffs cannot use the referendum process to repeal a local ordinance." *Id.* at 865.

Now, three years after the case began, on remand from the Eleventh Circuit, Plaintiffs seek to revive their case by seeking damages. Doc. 56-1 at 14. They concede "prospective relief is no longer available." Doc. 56 at 2. In all other respects, their amendment is virtually identical to the original Complaint. The City opposes amendment.

**ARGUMENT**

Although leave to amend should "be freely given when justice so requires," a "motion to amend may be denied on numerous grounds, such as undue delay, undue prejudice to the defendants, and futility of the amendment." *Carruthers v. BSA Advertising, Inc.*, 357 F.3d 1213, 1218 (11th Cir. 2004) (quotation omitted). This Court has discretion to deny leave to amend. *Id.* at 1217. "[I]t is not an abuse of discretion for a district court to deny a motion for leave to amend following the close of discovery, past the deadline for amendments, and past the deadline for filing dispositive motions." *Id.* at 1218 (quotation omitted).

Here, Plaintiffs have unduly delayed amending their request for relief, and their amendment would be futile. The Court would be within its discretion to deny leave to amend on either ground.

## I. Plaintiffs have unduly delayed seeking leave to amend.

Plaintiffs seek leave to amend more than three years after filing their case, only after the Eleventh Circuit confirmed—in January, more than six months ago—they cannot seek prospective relief. The Public Safety Training Center that they oppose has been finished for more than a year. The petition circulation that Plaintiffs supported ended in September 2023. The City could not accept those petitions at this late juncture even if Georgia law allowed the referendum Plaintiffs sought.

In short, the petition process that prompted this litigation has ended, and has been held legally futile in the first instance, as discussed further below. Plaintiffs' belated claim for damages is a naked attempt to revive a case that is over in every meaningful respect. Notably, Plaintiffs do not allege that they will ever again attempt to circulate a referendum petition, or that they plan to start another petition drive about the Training Center. They allege only that they "wanted to be part of" the "volunteer corps that obtain[ed] signatures supporting the referendum." Doc. 56-1 ¶ 19, 23, 27, 30. That volunteer corps is no longer active, and the courts have fully heard and rejected their claim to have a right to participate in it to force a referendum.

This Court should find that this belated amendment reflects "the [Plaintiffs'] own lack of reasonable diligence." *Quinn v. Powell*, 2024 WL 1395153, at *3 (N.D. Ga. Mar. 31, 2024). The facts on which their amended complaint is based "were known to [them] at the time they filed their [original] Complaint," and they "fail to explain why they could not have asserted these claims in their Complaint. Such unexplained tardiness constitutes undue delay." *Fenello v. Bank of Am., N.A.*, 926 F.Supp.2d 1342, 1352–53 (N.D. Ga. 2013) (quotation omitted).

## II. Leave to amend would be futile because Plaintiffs cannot state a First Amendment claim.

"[J]ustice does not require district courts to waste their time on hopeless cases," so this Court may deny leave to amend where the amendment "fails to state a claim." *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1255 (11th Cir. 2008). Plaintiffs have not stated a First Amendment violation for the reasons that follow.

### A. Plaintiffs cannot state a First Amendment claim because they have no state-law right to petition to repeal a municipal ordinance.

To begin, Plaintiffs' claim fails because they have no First Amendment right to require the City to create a citizen-initiative process to repeal a City ordinance. The Eleventh Circuit has squarely held that the First Amendment only applies to citizen initiatives "should [states] choose to create such processes in the first place." *Biddulph v. Mortham*, 89 F.3d 1491, 1500 (11th Cir. 1996). That is, the First Amendment regulates participation in state-created initiatives, but it does not compel

the City to make a citizen-initiative process available. Every circuit to address the question has reached that same conclusion.[2]

Plaintiffs' First Amendment claim must fail because Georgia has no initiative process to repeal a City ordinance. In *Kemp v. City of Claxton*, 269 Ga. 173 (1998), the Georgia Supreme Court held that the Georgia "petition and referendum [process] is intended to be available only when the proposed amendment is intended to affect a city charter." *Id.* at 176. The Eleventh Circuit held in the appeal of this case that "*Kemp* is still controlling precedent in Georgia," and this court "is bound by *Kemp* unless and until it is overruled." *Baker*, 164 F.4th at 866. Thus, there is no state-created right to the petition process the Plaintiffs wanted to participate in, and they cannot challenge the rules governing participation in a non-existent process.

Plaintiffs will no doubt claim in reply that they assert a First Amendment right to participate in the petition process that was underway, not a right to an initiative process to repeal municipal ordinances. But any such argument would run headlong into the Eleventh Circuit's ruling that "*Kemp* forecloses the use of a referendum petition" in this case. *Baker*, 164 F.4th at 866. The petition process underway was a nullity under *Kemp*. The First Amendment does not give Plaintiffs a right to

---

[2] *See Pierce v. Jacobsen*, 44 F.4th 853, 859 (9th Cir. 2022) ("[T]here is no constitutional right to enact state laws … through an initiative process."); *Save Palisade FruitLands v. Todd*, 279 F.3d 1204, 1211 (10th Cir. 2002) ("[N]othing in the language of the Constitution commands direct democracy.").

participate in a process that neither they nor anyone else could use under state law, and that the City was bound by Georgia law to reject.

To be sure, Judge Newsome's dissent in the appeal of this case suggests Plaintiffs have a "separate, stand-alone First Amendment interest in participating in the signature-gathering process itself" to "ma[k]e their voices heard." *Baker*, 164 F.4th at 869. But Judge Newsome wrote alone on that point; his views are not those of the panel. And on the merits, his dissent erroneously conflates distinct aspects of the First Amendment: the right to speak on matters of public concern, and the right to participate in a petition process. Judge Newsome sees the former as the First Amendment interest at stake. But even if he is right about that, there is still no First Amendment violation here. The City never stopped Plaintiffs from speaking on any matter of public concern. Plaintiffs could have and still may petition, distribute leaflets, write op-eds, approach strangers in public, collect signatures, and engage all manner of speech to persuade people of their position. But what Plaintiffs want from this Court is recognition of a right to help trigger a citizen referendum. State law does not give them that right no matter what this Court does.

**B. Plaintiffs cannot state a First Amendment claim because the residency requirement does not violate the First Amendment.**

Alternatively, the Court can reject the amendment because the residency requirement in the petition process does not violate the First Amendment. "States allowing ballot initiatives have considerable leeway to protect the integrity and

reliability of the initiative process." *Buckley v. Am. Const. Law Found.*, 525 U.S. 182, 191 (1999). "[T]here must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Burdick v. Takushi*, 504 U.S. 428, 433 (1992) (quotation omitted). The residency requirement clears the constitutional hurdle.

**1. The Court should apply rational-basis review rather than strict scrutiny.**

Strict scrutiny does not automatically apply to First Amendment challenges to election regulations. Instead,

> A court considering a challenge to a state election law must weigh the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate against the precise interests put forward by the State as justifications for the burden imposed by its rule, taking into consideration the extent to which those interests make it necessary to burden the plaintiff's rights.

*Burdick*, 504 U.S. at 433. Strict scrutiny applies to "severe restrictions." *Id.* Rational basis review applies to "reasonable, nondiscriminatory restrictions." *Id.*

The residency requirement falls into the latter category. It merely requires petition forms to include a place for the collector to "swear that such person is a resident of the city and that the signatures *were collected* inside the boundaries of the city." Atl. Code Ord. § 66-37(b). The passive voice is key. The person who swears the signatures were collected inside the City limits need not be the person who actually collected the signatures. A City resident could accompany several non-

City residents to collect signatures and then attest they were collected in compliance with City ordinance and state law. Imagine, for example, a table set up at Mercedes-Benz Stadium before a game. A single City resident could work with dozens of non-residents to collect signatures while complying with the residency requirement.

Similarly, a City resident could speak with or otherwise monitor non-City residents who collected signatures, determine where they collected those signatures, and then certify that those signatures were collected within the City. There is no requirement that the City resident be present when the signatures are collected, so no meaningful imposition or hinderance on petition gathering.

That sets the residency requirement apart from the regulations that courts have found to impose "undue hindrances to political conversations and the exchange of ideas." *Buckley*, 525 U.S. at 192. The requirement that a City resident attest to non-residents' collection of signatures as being within the City during the petition process imposes only a minimal burden.

The City recognizes that this Court determined strict scrutiny should apply in its preliminary injunction order. Doc. 26 at 12. And to be sure, other courts have applied strict scrutiny to residency requirements. *See, e.g.*, *We The People PAC v. Bellows*, 40 F.4th 1, 14 (1st Cir. 2022); *Pierce*, 44 F.4th at 861. But the City's residency requirement differs from those other requirements in constitutionally significant ways. In *We The People PAC*, the First Circuit considered a requirement

that a Maine resident "personally witnessed all of the signatures collected and that to the best of the circulator's knowledge and belief each signature is the signature of the person whose name it purports to be." 40 F.4th at 5 (quotation omitted). In *Pierce*, the Ninth Circuit considered a Montana law that required the person gathering signatures to be a Montana resident. 44 F.4th at 858. By contrast, the City's residency requirement allows non-residents to gather signatures, so long as a City resident attests the signatures were collected in the City limits.

Thus, the residency requirement does not regulate core political speech—the moment "an initiative petition circulator approaches a person and asks that person to sign the petition." *Buckley*, 525 U.S. at 206 (O'Connor, J., concurring in the judgment in part and dissenting in part). Anyone, Plaintiffs included, may solicit a signature and try to persuade a person of the need to hold a referendum. All a City resident must do is certify that the solicitation occurred inside the City limits, which does not actually require them to accompany each and every non-resident signature gatherer.

Moreover, the Eleventh Circuit has never held that strict scrutiny applies to residency requirements like the City's. This Court previously recognized as much. Doc. 26 at 11. Under binding Eleventh Circuit precedent, "states maintain broad discretion in fashioning initiative mechanisms." *Biddulph*, 89 F.3d at 1500. This broad discretion "is subject to strict scrutiny only in certain narrow circumstances,"

such as "regulations that were content based or had a disparate impact on certain political viewpoints," or that "impermissibly burden[ed] the free exchange of ideas." *Id.* But "[m]ost restrictions a state might impose on its initiative process would not implicate First Amendment concerns." *Id.* Under *Biddulph*, rational-basis review is the appropriate level of scrutiny for the residency requirement.

**2. The residency requirement survives rational-basis review.**

Under rational basis review, "the State's important regulatory interests are generally sufficient to justify" an election regulation. *Burdick*, 504 U.S. at 434. The City has an undeniably important interest in preventing fraud and in "maintaining the orderly administration of elections, and in avoiding confusion, deception, and even frustration of the democratic process." *Cowen v. Sec'y of State*, 22 F.4th 1227, 1233–34 (11th Cir. 2022).

The residency requirement serves these reasonable interests by allowing the City to more readily subpoena petition circulators to confirm that signatures were collected inside the City, as required by City ordinance and state law. The City Council has subpoena power, *see* Atl. City Code § 2-103, and the City may seek to enforce subpoenas in City court, *see* Atl. City Code § 62-35. But that subpoena power may not as readily reach non-residents of the City, or residents of other states. At minimum, enforcing a subpoena to a non-resident presents complications that

enforcing a subpoena to a City resident would not. The City could reasonably require a City resident to sign petition forms for that reason.

Similarly, the City's residency requirement reflects the legislative determination that a City resident will be more familiar with the City's boundaries than a non-City resident. Even if that conclusion isn't necessarily true, the legislative choice that it reflects is well within reasonable bounds.

**3. The residency requirement survives strict scrutiny.**

The residency requirement would also satisfy strict scrutiny, if the Court opts to apply it. To satisfy strict scrutiny, the residency requirement must be "warranted by the state interests (administrative efficiency, fraud detection, informing voters) alleged to justify those restrictions." *Buckley*, 525 U.S. at 192. In *Buckley*, a plurality of Justices assumed that a state could require petition circulators to be residents consistent with strict scrutiny for precisely the same administrative efficiency and fraud detection goals outlined above. *Id.* at 197; *id.* at 211 (Thomas). And the Eighth Circuit has upheld a residency requirement for petition circulators. *Initiative & Referendum Inst. v. Jaeger*, 241 F.3d 614, 616–17 (8th Cir. 2001). The Court should reach that same conclusion.

As noted above, the residency requirement serves the City's important interest in detecting and preventing fraud by enabling the City to subpoena petition circulators. In *Buckley*, the Supreme Court noted that a residency requirement in a

Colorado petition law "ensure[d] that circulators will be amenable to the Secretary of State's subpoena power, which in these matters does not extend beyond the State's borders." 525 U.S. at 196. That requirement thus furthered the "interest in reaching law violators." *Id.* To be sure, the Supreme Court did not directly address the constitutionality of the residency requirement, but the residency requirement was a key part of its analysis. The Supreme Court struck down a requirement that petition circulators be registered voters because, it found, the residency requirement more precisely achieved the state's law enforcement goal. *Id.* at 196–97.

*Jaeger* reinforces this conclusion. There, following *Buckley*, the court found that a residency requirement served a "compelling interest in preventing fraud" by "ensuring that circulators answer to the Secretary's subpoena power." 241 F.3d at 616.

The same is true here. The City has an undoubtedly compelling interest in preventing fraud in the petition circulation process, and the residency requirement ensures that petition circulators will be amenable to a City subpoena. Striking down the residency requirement would enable unscrupulous non-resident petition circulators to avoid scrutiny for their signature collection.

Although some courts have suggested that petition circulators could agree to submit to legal process before circulating the petition, *see, e.g.*, *We the People PAC*, 40 F.4th at 20–21, those courts did not consider the practical difficulties of enforcing

subpoenas outside the City's jurisdiction, *see id.* A petition circulator truly bent on fraud is not likely to honor an agreement to appear at the City's summons, and enforcing such an agreement in foreign courts would impose additional burden on the City. The residency requirement serves the twin aims of "administrative efficiency" and "fraud detection" in a narrowly tailored way by ensuring individuals are amenable to process in the City's courts.

Following *Buckley* and *Jaeger*, the Court should therefore find that the residency requirement satisfies strict scrutiny.

**C. The belated request for damages does not save the amendment.**

To claim damages under 42 U.S.C. § 1983, Plaintiffs must show that a constitutional violation caused damages. "For damages to be proximately caused by a constitutional tort, a plaintiff must show that, except for that constitutional tort, such injuries and damages would not have occurred and further that such injuries and damages were the reasonably foreseeable consequences of the tortious acts or omissions in issue." *Jackson v. Saul*, 206 F.3d 1156, 1168 (11th Cir. 2000).

Here, Plaintiffs' alleged inability to circulate the petition has nothing to do with the residency requirement. Georgia law does not allow referendums to repeal local ordinances, *see Kemp*, 269 Ga. at 176, irrespective of the residency requirement.

The nominal damages claim fares no better. "Nominal damages are appropriate if a plaintiff establishes a violation of a fundamental constitutional right, even if [the plaintiffs] cannot prove actual injury sufficient to entitle [them] to compensatory damages." *KH Outdoor, LLC v. City of Trussville*, 465 F.3d 1256, 1260–61 (11th Cir. 2006). But nominal damages are triggered only "upon proof of infringement of a fundamental First Amendment liberty." *Id.* at 1261 (quotation omitted). Here there was no such infringement for all the reasons stated above.

**CONCLUSION**

For these reasons, the Court should deny leave to amend.

Respectfully submitted this 26th day of August, 2026.

*/s/ Robert L. Ashe*
Robert L. Ashe III
Georgia Bar No. 208077
ashe@bmelaw.com
Jane D. Vincent
Georgia Bar No. 380850
vincent@bmelaw.com
Matthew R. Sellers
Georgia Bar No. 691202
sellers@bmelaw.com
Bondurant, Mixson & Elmore, LLP
3900 One Atlantic Center
1201 W. Peachtree Street, NW
Atlanta, GA 30309
Tel: (404) 881-4100
Fax: (404) 881-4111

*Attorneys for the City of Atlanta*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1D of the Local Rules for the Northern District of Georgia, I hereby certify that the foregoing pleading has been prepared in Times New Roman, 14-point font, as permitted by Local Rule 5.1C.

*/s/ Robert L. Ashe III*
Robert L. Ashe III
Georgia Bar No. 208077

**CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of August, 2026, I electronically filed the foregoing *Defendant City of Atlanta's Opposition to Plaintiffs' Motion for Leave to Amend* with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

*/s/ Robert L. Ashe*
Robert L. Ashe III
Georgia Bar No. 208077