**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| LISA BAKER, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No.: |
| | ) | |
| v. | ) | 1:23-cv-2999-MHC |
| | ) | |
| CITY OF ATLANTA, | ) | |
| | ) | |
| Defendant. | ) | |

# REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

The City asks this Court to treat the Eleventh Circuit's decision as something it expressly declined to be: a decision on the merits of Plaintiffs' First Amendment claim. But *Baker v. City of Atlanta*, 164 F.4th 850 (11th Cir. 2026), decided only that Plaintiffs could not obtain a preliminary injunction because they did not suffer an irreparable injury for preliminary injunctive relief. The panel expressly declined to address the City's separate merits argument, and remanded the case for further proceedings. *Id.* at 864–67 & n.13. That is not a judgment on the merits.

The City otherwise asks this Court to reverse its finding that Plaintiffs' were substantially likely to succeed on their First Amendment claim, and now to hold

that Plaintiffs cannot even plausibly state a claim. This Court should reject the City's recycled arguments and allow Plaintiffs to file an amended complaint.

# I. ARGUMENT AND CITATION OF AUTHORITY

## a. Plaintiffs did not unduly delay seeking retrospective relief

Rule 15 provides that leave to amend should be "freely give[n] when justice so requires." Fed. R. Civ. P. 15(a)(2). Unless there is a substantial reason to deny leave, the district court's discretion is limited. *Thomas v. Town of Davie*, 847 F.2d 771, 773 (11th Cir. 1988). Relevant considerations include undue delay, prejudice, bad faith, and futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The City principally argues that Plaintiffs could have requested damages when this action began. Doc. 59 at 4–5.

This case spent most of its life on an interlocutory appeal concerning prospective relief. The proposed amendment responds to the result of that appeal by seeking retrospective relief for the same First Amendment violation alleged from the beginning. Plaintiffs filed an amended complaint to clarify the relief sought (after the appeal) and to enable the parties to either file dispositive motions or proceed to discovery.[1]

[1] Under Rule 54(c), the absence of a specific damages demand from the original prayer does not preclude Plaintiffs from later seeking them. A final judgment ordinarily "should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Fed. R. Civ. P. 54(c).

That is almost exactly what the Eleventh Circuit held should have been permitted in *McKinley v. Kaplan*, 177 F.3d 1253 (11th Cir. 1999). In *McKinley*, the plaintiff filed a § 1983 action alleging First Amendment retaliation and sought only declaratory and injunctive relief. *Id.* at 1255–56. The injunctive relief claim was mooted while the case was pending. The plaintiff then sought leave to amend to add money damages. The district court denied amendment in part because the damages claim appeared designed to avoid mootness. The Eleventh Circuit reversed. It held that there is "nothing illegitimate" about seeking a new remedy when intervening events make the original remedy impossible. *Id.* at 1258.

Unlike any of the cases cited by the City, it cannot claim it was prejudiced by any delay. The City has not filed a motion to dismiss or a motion for judgment on the pleadings. There is no scheduling order and the Court did not provide a deadline for the filing of Plaintiffs' motion for leave to amend. The cases cited by the City concern situations where a plaintiff has delayed adding a party, or delayed amending a complaint in the face of a pending motion to dismiss. *See Carruthers v. BSA Advertising, Inc.*, 357 F.3d 1213 (11th Cir. 2004); *Quinn v. Powell*, 2024 WL 1395153 (N.D. Ga. Mar. 31, 2024); *Fenello v. Bank of Am., N.A.*, 926 F.Supp.2d 1342 (N.D. Ga. 2013).

### b. Plaintiffs' proposed amended complaint states a claim under the First Amendment

#### *1. The First Amendment applies to the collection of signatures*

##### *A. The Eleventh Circuit did not decide that Plaintiffs suffered no First Amendment violation*

In *Baker*, the court did not hold that Plaintiffs suffered no First Amendment violation. It held only that Plaintiffs could not establish the irreparable injury necessary to obtain a preliminary injunction. 164 F.4th at 850. "The key word in this consideration is irreparable." *Sampson v. Murray*, 415 U.S. 61, 90 (1974). The panel expressly declined to address the City's argument that Plaintiffs lacked a substantial likelihood of success on the merits, but there is another form of relief still now available in the form of nominal and compensatory damages.

Instead, the panel focused on whether the referendum at issue would ultimately be successful under *Kemp.* Because it found that the referendum could not accomplish the state-law objective for which it had been initiated, Plaintiffs could not establish the irreparable harm necessary "for obtaining an injunction." The Court accordingly vacated only the preliminary injunction and remanded "for further proceedings." *Id.* at 866.

That remedy-specific holding does not resolve whether the City violated the First Amendment by prohibiting Plaintiffs from engaging in petition circulation

and the political advocacy attendant to it. The panel conspicuously left that merits question unanswered. *Baker* establishes only that Plaintiffs cannot obtain an injunction premised on their ongoing exclusion from this legally unavailable referendum. *Cf. Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1285 (11th Cir. 1990) ("No authority from the Supreme Court or the Eleventh Circuit has been cited to us for the proposition that the irreparable injury needed for a preliminary injunction can properly be presumed from a substantially likely equal protection violation. The only area of constitutional jurisprudence where we have said that an *on-going* violation constitutes irreparable injury is the area of first amendment and right of privacy jurisprudence.") (emphasis added). It does not establish that the City was constitutionally free to restrict Plaintiffs' speech while that process was underway, nor does it decide whether Plaintiffs may recover damages for a completed violation of that right.

### *B. Plaintiffs have a First Amendment right to collect signatures on City-issued referendum petition forms*

The City next attacks a claim Plaintiffs do not make. Plaintiffs do not contend that the First Amendment required the City to create a legally effective referendum procedure for repealing Ordinance 21-O-0367. The proposed amended complaint instead challenges the City's restriction on Plaintiffs' ability to

participate in signature collection once the City approved official petitions and opened a signature-collection period. *See* Doc. 56-1 ¶¶ 8–10, 37–71.

That distinction is consistent with *Biddulph v. Mortham*, 89 F.3d 1491 (11th Cir. 1996). In *Biddulph*, the court simultaneously recognized that "the circulation of initiative petitions and the concomitant exchange of political ideas constitutes 'core political speech.'" *Id.* at 1498 (citing *Meyer v. Grant*, 486 U.S. 414, 423 (1988)). The State's authority over whether to create an initiative mechanism does not include authority to burden the political advocacy occurring during petition circulation. *Id.* at 1498–1500. Indeed, *Biddulph* explained that *Delgado v. Smith*, 861 F.2d 1489 (11th Cir. 1988), "stands for the proposition that a state cannot impede the petition circulation process as Colorado did in *Meyer*." *Biddulph*, 89 F.3d at 1500.

Atlanta issued official petition forms and began the statutory collection period. Doc. 56-1 ¶¶ 8–9. The residency restriction then prevented Plaintiffs from independently collecting signatures because they could not execute the required circulator attestation. *Id.* ¶ 10. Plaintiffs allege that this restriction directly curtailed when they could canvass, how long they could canvass, and how many people they could reach. *Id.* ¶¶ 38–71. That protected speech claim is independent of whether Plaintiffs and others would ultimately succeed in producing a valid referendum.

### *2. The residency restriction is unconstitutional under the First Amendment*

This Court has already held that Plaintiffs have established a substantial likelihood of success on the merits of their First Amendment claim, *see* Doc. 26 at 9, and the Eleventh Circuit did not disturb that holding. The City nevertheless reiterates the exact same arguments this Court previously rejected, except this time it asks the Court to go even further and find that Plaintiffs' First Amendment claim does not meet the plausibility standard under Rule 12(b)(6).

This Court should reject the arguments for the same reasons it previously articulated. Every circuit to consider this issue has found that residency restrictions on petition circulation are subject to strict scrutiny. *See Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 317 (4th Cir. 2013) (holding that a Virginia residency requirement for circulators of petitions for an individual to be placed on the presidential ballot was unconstitutional); *We The People PAC v. Bellows*, 40 F.4th 1, 14 (1st Cir. 2022) (holding that Maine's requirement that petition circulators be state residents is a severe burden on political speech subject to strict scrutiny); *Pierce v. Johnson*, 44 F.4th 853, 861 (9th Cir. 2022) (holding that Montana's requirement that initiative petition signature gatherers be state residents "imposes a severe burden on the First Amendment rights of both out-of-state

residents and in-state proponents and is therefore subject to strict scrutiny"); *Chandler v. City of Arvada, Colorado*, 292 F.3d 1236 (10th Cir. 2002) (applying strict scrutiny to home rule ordinance prohibiting nonresidents from circulating referendums); *Yes on Term Limits, Inc. v. Savage*, 550 F.3d 1023, 1028 (10th Cir. 2008) ("[S]trict scrutiny is the correct legal standard under which to analyze Oklahoma's ban on non-resident circulators.").[2]

The only case that even approaches that the City's theory is *Initiative & Referendum Institute v. Jaeger*, 241 F.3d 614, 616 (8th Cir. 2001), where the Eighth Circuit applied strict scrutiny but nevertheless found a statewide residency restriction survived because it furthered the state's interest in combating fraud due to limitations on interstate subpoena power. But this question is before the Court at

[2] Circuits have reached the same result when analyzing rules concerning residency restrictions for circulating local and statewide candidate petitions. *See Lerman v. Bd. of Elections in City of New York*, 232 F.3d 135, 146 (2d Cir. 2000) (requirement that a witness circulating a local candidate's petition reside in the political subdivision of the candidate seeking nomination); *Krislov v. Rednour*, 226 F.3d 851, 860-61 (7th Cir. 2000) (finding Illinois' law that restricted circulators who live out-of-district or out-of-state was not narrowly tailored for three proposed governmental interests); *Nader v. Blackwell*, 545 F.3d 459 (6th Cir. 2008) (finding statute that required nominating petition circulators to be registered voters and residents of Ohio was subject to exacting scrutiny); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 317 (4th Cir. 2013) (holding witness residency requirement for circulating nominating petitions required non-resident circulators to "work in tandem" with residents was "patently burdensome" and failed strict scrutiny); *Wilmoth v. Sec'y of New Jersey*, 731 F. App'x 97 (3d Cir. 2018) (holding where "residency is the sine qua non for determining whether [one] may lawfully circulate nomination petitions" strict scrutiny applies).

the pleading stage. All facts and inferences must be construed in Plaintiffs' favor. It is impossible for the City to prevail at this stage even under the theory adopted in *Jaeger*.

The same goes for the City's argument that § 66-37(b) never actually required a nonresident circulator to work alongside a resident because a resident could simply attest after the fact that signatures were collected within City limits. Doc. 59 at 9–11. That contention cannot support denial of leave as futile because it is a factual argument that ignores the allegations in the proposed amended complaint. Plaintiffs allege that the ordinance requires a place "for the person collecting signatures" to identify herself and "swear that such person is a resident of the city." Atlanta Municipal Code § 66-37(b). They separately alleged that the rule was in fact implemented as a resident-witness requirement. For example, Plaintiff Baker alleges that she had to locate a resident partner before canvassing and had to stop when the partner left. Doc. 56-1 ¶¶ 39–44. She further alleges that the resident partner generally held the petition and personally witnessed signatures. *Id.* ¶¶ 46–48. Plaintiff Jones Moore likewise alleges that she could canvass only when paired with a resident who witnessed the signatures. *Id.* ¶¶ 63–68. And the amended complaint alleges expressly that the residency restriction required a City

resident to "personally witness and attest to every signature a non-resident volunteer collected." *Id.* ¶ 71.

Those factual allegations must be accepted as true when determining whether the proposed amendment states a claim. The City's competing account cannot establish futility. The proposed amendment therefore states, at minimum, a plausible First Amendment claim.

#### ***3. Plaintiffs' exclusion from referendum signature collection entitles Plaintiffs to damages***

The City finally argues that damages cannot save the amendment because Plaintiffs cannot establish compensable injury. Doc. 59 at 15–16. That argument overlooks the availability of both nominal and presumed damages.

"Nominal damages are appropriate if a plaintiff establishes a violation of a fundamental constitutional right, even if [the plaintiff] cannot prove actual injury sufficient to entitle [her] to compensatory damages." *KH Outdoor, LLC v. City of Trussville*, 465 F.3d 1256, 1260–61 (11th Cir. 2006). And *Uzuegbunam v. Preczewski*, 592 U.S. 279, 291–92 (2021), confirms that nominal damages provide redress for a completed constitutional violation even where prospective relief is no longer available. *See also Carey v. Piphus*, 435 U.S. 247 (1978).

Every Plaintiff seeks nominal damages. Doc. 56-1 ¶¶ 83–84. Thus, if Plaintiffs establish that Atlanta infringed their First Amendment rights, their inability to prove some additional amount of compensatory damages would not defeat the claim.

Plaintiffs are also entitled to other damages. Plaintiff Baker alleges repeated lost canvassing opportunities and reduced political communication caused by the residency restriction. Doc. 56-1 ¶¶ 38–53, 81. Plaintiff Jones Moore alleges reduced door-to-door contacts and the inability to canvass independently. *Id.* ¶¶ 60–69. Plaintiffs allege that these restrictions ceased when the residency requirement was enjoined. *Id.* ¶¶ 54–58, 68–69. Moreover, Plaintiffs are entitled to presumed damages even if they cannot quantify the amount of compensatory damages they should be awarded. *See, e.g.*, *Miko v. Jones*, 2023 WL 196920, at *2 (N.D. Ga. Jan. 17, 2023) (awarding presumed damages for a First Amendment violation involving an elected official blocking a constituent from communicating through Facebook); *Prison Legal News v. Nw. Reg'l Jail Auth.*, 2019 WL 4786054, at *5 (W.D. Va. Sept. 30, 2019) (permitting a rough approximation of the harm from the lost opportunity to communicate with inmates as part of PLN's damages).

The City relies on *Jackson v. Sauls*, 206 F.3d 1156, 1168 (11th Cir. 2000), for ordinary constitutional-tort causation principles. Plaintiffs do not dispute those

principles. But the relevant injury is not the failure ultimately to repeal the leasing ordinance. It is the loss and restriction of Plaintiffs' opportunities to engage in petition-circulation speech. The amended complaint alleges that the residency requirement itself caused those losses. And again, the City's causation argument ignores the allegations in the proposed amended complaint and improperly substitutes the City's version of the facts.

Whether Plaintiffs can ultimately establish the amount and type of compensatory damages is a question for later proceedings. Their nominal-damages claims alone preclude a finding that amendment would be futile.

## II. CONCLUSION

For the foregoing reasons, Plaintiffs request this Court grant their motion for leave to file an amended complaint.

[Signatures appear on the following page.]

Submitted this 9th day of September, 2026.


**Jeff Filipovits**
Georgia Bar No. 825553

**Wingo Smith**
Georgia Bar No. 147896

FILIPOVITS & SMITH, LLC
315 W. Ponce de Leon Ave.
Suite 865
Decatur, GA 30030
404-905-2225
jeff@civil-rights.law
wingo@civil-rights.law

**Gerald Weber**
Georgia Bar No. 744878

Law Offices of Gerry Weber, LLC
Post Office Box 5391
Atlanta, Georgia 31107
(404) 522-0507 (phone)
wgerryweber@gmail.com

## CERTIFICATE OF COMPLIANCE

Counsel hereby certifies that this document has been prepared in compliance with Local Rule 5.1C using 14-point Times New Roman font.

This 9th day of September, 2026.

**Jeff Filipovits**
Georgia Bar No. 825553
FILIPOVITS & SMITH, LLC
315 W. Ponce de Leon Ave., Ste. 865
Decatur, GA 30030
404-905-2225
jeff@civil-rights.law